## VICTOR P. KLAPACS'S CASE.

Suffolk. November 7, 1968. — December 9, 1968.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Medical benefits, Laches. *Husband and Wife,* Services rendered. *Laches. Words,* "Medical services."

The marital relationship would not bar a wife from receiving payment under § 30 of the Workmen's Compensation Act, G. L. c. 152, for medical services rendered by her to her husband in connection with a compensable injury to him. [48]

In connection with an injury to an employee compensable under the Workmen's Compensation Act, of "retinal hemorrhages and myocardial infarction" which progressed into legal blindness, services performed by his wife, a trained physiotherapist and licensed masseuse, consisting of keeping track of and administering medicines, preparing frequent salt free meals, dressing and undressing him, and accompanying him wherever he went, were not medical services for which she was entitled to be paid under G. L. c. 152, § 30, even though her services were performed in carrying out his attending physician's instructions as to medicines, diet and care, and even though paid care for her husband would have been required if she had not performed them [50]; frequent services by the wife as masseuse were compensable if prescribed as services of a trained attendant by her husband's physician [50].

Laches would not bar a claim by a wife under § 30 of the Workmen's Compensation Act, G. L. c. 152, for medical services rendered to her husband in connection with a compensable injury to him even if she did not make claim and the insurer had no notice thereof until she had rendered such services for many years. [50–51]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act upon a claim by the employee's wife against the Commonwealth.

The case was heard by *Collins, J.*

*Ralph C. Copeland (Walter W. Baldwin* with him) for the claimant.

*Paul F. X. Powers,* Assistant Attorney General (*Carol H. Claff,* Deputy Assistant Attorney General, with him) for the Commonwealth.

WHITTEMORE, J.   The employee sustained an industrial injury in 1954, established, by agreements for compensation, as "retinal hemorrhages and myocardial infarction." By the progression of his affliction, he had become legally blind. Since 1957, he has been under medication for diabetes, not claimed to be employment connected. At some time[1] before the matter came on for hearing before the single member on September 1, 1966, a hearing was requested as to the liability of the Commonwealth for a bill for nursing services rendered by the employee's wife from September 17, 1954, to date.   The board allowed compensation to the wife at the rate of $10 a day from September 17, 1954, to June 21, 1967, a total of $46,500.   The ensuing decree of the Superior Court dismissed the claim and the employee appealed.

The wife was a trained physiotherapist and a licensed masseuse.   She had worked as a masseuse in Massachusetts for about ten years but gave up her work in 1949 to stay at home as a housewife.   At the time of the hearings in 1966 the employee was about seventy-eight years of age.   The services being performed by the wife, attributable to the compensable disability, were keeping track of and administering medicines, preparing six small meals a day for a salt free diet, dressing and undressing the patient who might be out of bed four or five hours at a time, massaging, and accompanying him wherever he went.

The employee was not hospitalized in 1954 but was in the hospital on seven or eight occasions from 1958 to 1966, some of them related to the diabetic condition.

The employee and his wife had taken trips abroad with touring groups in 1961 (three weeks), 1963 (sixty-five days, around the world), 1964 (three weeks), 1965 (sixty days). Prior to his hospitalization in 1961 for the heart condition they went to Florida with the car for two or three weeks. "It was in the winter."

Dr. Thomas O'Toole, the employee's physician from 1954 to 1956, did not testify.   The employee had also been under

---

[1] The Commonwealth's brief states that it was on July 15, 1965.

the care of Dr. Norman Welch for his heart trouble and Dr. Joslin of the Joslin Clinic for diabetes.

The wife testified that she had rendered nursing services from 1954 to date and had followed doctors' orders.[2]

The finding of need for nursing care depends upon the testimony of Dr. Thomas G. Connelly who examined the employee on August 26, 1966, and who had seen him, as a member of a panel, with Dr. Welch, in October or November of 1955. He did not then make an examination. Dr. Connelly took a history in 1966, partly from the employee, but mostly from his wife, and made an examination. He formed the opinion that "since September 17, 1954 he has been totally disabled as a result of heart disease and visual defects, and that he has required the nursing services afforded by his wife." In the absence of these services he would have had to be confined to a nursing home or a chronic hospital. Underlying his opinion was the information received that the employee requires to be dressed by his wife and led around by her, and requires injections of insulin twice a day and supervision of his medication and diet. The weighing and measuring of food is because of the diabetes but the exclusion of salty foods is required by the heart trouble. A minor portion of the nursing attention was required by the diabetes.

1. The wife was not barred from receiving payment for nursing services because of the marital relationship. Larson, Workmen's Compensation Law, § 61.13 (and 1968 Suppl.),

---

[2] "I have to see . . . that he takes his medicine. I follow the orders of the doctor very strictly. I have to bathe him, dress him [and undress him] and conduct him around the house, and when he has to go to the hospital, the doctor, and all." She also testified that his diet is strict; everything has to be weighed and measured; nitroglycerine is given when he has pain; he has to rest four times a day. Q. "The medicines you were giving him, and any other care you were giving him, whether or not that was prescribed by the doctor who was taking care of him?" A. "Yes." Q. "Were you doing this as the doctor told you to?" A. "Always." Q. "The attending doctor didn't say it was necessary for a registered nurse to administer them?" A. "He knew I had nursing. He felt I had nursing." The diet was prescribed by Dr. O'Toole. Q. "During all this time you did not give your husband masseur treatments?" A. "I have to. The doctor told me to take care of his feet, arms and back for circulation. . . . That was prescribed to him."

and cases cited. *A. G. Crunkleton Elec. Co. Inc.* v. *Barkdoll* 227 Md. 364, 370–372.

It is beside the point that no debt may have arisen between husband and wife or that in the absence of a basis for implying an obligation to pay the wife, compensation for her services after an accident could not be recovered in an action at law against a tortfeasor. See *Daniels* v. *Celeste,* 303 Mass. 148, 151.[3] The employer through the insurer, if insured, has the affirmative duty to furnish to an injured employee "adequate and reasonable medical and hospital services, and medicines if needed, together with the expenses necessarily incidental to such services." G. L. c. 152, § 30. If services that fall within the statutory provisions are furnished by the wife, they should be paid for. The statutory obligation is not expressed in terms of reimbursing the employee for amounts he became obligated to pay. The Workmen's Compensation Law "creates a new relation with its peculiar statutory incidents." *Ahmed's Case,* 278 Mass. 180, 184. *Greem* v. *Cohen,* 298 Mass. 439, 442–444. *Opinion of the Justices,* 309 Mass. 571, 601–602.

2. The term "medical services" as used in the statute is inclusive of the services of a nurse or trained attendant rendered under the direction and control of a physician and has been restricted to services so rendered. *Golden's Case,* 240 Mass. 178, 181 (massage performed, so far as appeared, solely upon the employee's request was not covered). *Meuse's Case,* 262 Mass. 95, 97. *Snider's Case,* 334 Mass. 65, 70. In *Levenson's Case,* 346 Mass. 508, 509, 511, the restriction was restated in the course of holding that the term "medical services" is not restricted to those rendered by a human agency and is inclusive of trips to Florida which the attending physician had ordered as "absolutely necessary medically."

The phrase "together with the services necessarily incidental to such services" was added by St. 1927, c. 309, § 5, and has been broadly construed. *Snider's Case, supra,*

---

[3] A wife may now contract with her husband. G. L. c. 209, § 2, as amended by St. 1963, c. 765, § 1.

334 Mass. at 70; (taxi fares to and from the hospital and doctor's offices). *Levenson's Case, supra.*

3. It is plain that most of the services performed by the wife have not been medical services. We assume that the giving of particular medicines may in extraordinary cases be such a precise or hazardous procedure as to require the services of a trained attendant. That does not appear here. Neither dressing and undressing the employee nor accompanying him because of his blindness nor preparing frequent salt free meals is in the category of expert services. That the attending physician gave the wife instructions as to medicines, diet, and care does not make her work in carrying out the instructions nursing services or medical services. The wife, it is apparent, has been greatly burdened by her husband's illness and has faithfully done all the multitude of extra things that needed to be done. Had she not been there, as Dr. Connelly testified, paid care would have been required. This is equally true in the many cases where ill, infirm, elderly persons are cared for by their spouses. That paid care would have been the alternative, absent the spouse, does not bring the services within the statute.

4. Except in one aspect, the evidence does not show any support for a finding that medical services were rendered under the direction and control of a physician. The board could have found (fn. 2) that the doctor had prescribed massaging of the feet, arms, back and legs for circulation. Although the record is not clear, it suggests that the physician who ordered the rubbing knew that the wife was especially competent to give massage, and hence that he may have been intending to prescribe the services of a trained attendant. We think it unnecessary that there be any control by the physician of services of this kind performed as directed so long as the need continued. That such services were frequently performed plainly does not, however, support an award of $10 a day based on all the services performed by the wife other than those required for diabetes.

5. The Commonwealth asks that we dismiss the claim for laches. No statute of limitations applies to such a claim

and we think lapse of time alone should not bar it in the absence of a statutory provision. There is perhaps some possibility of prejudice for, as the Commonwealth points out, it has not been on notice as to the desirability of examining the employee to determine the necessity of the services. But this is a matter for the Legislature, and under our continuing rule that the services must have been directed by a physician, and, if the nature of the service or other circumstances reasonably so indicate, administered under his continuing control, the likelihood of prejudice is diminished.

6. The decree is reversed and the case remanded to the Industrial Accident Board to find with such further evidence as is required whether a physician in effect prescribed the services of a masseuse and the extent to which such services were performed and a reasonable allowance therefor.

*So ordered.*