## Richmond

## WARREN TRUCKING COMPANY, INC., ET AL.

### v.

### CHARLIE E. CHANDLER

April 24, 1981.

Record No. 801064.

Present: Carrico, C.J., Harrison, Cochran, Poff, Compton and Thompson, JJ.

*William O. Tune, Jr.* (*James C. Joyce, Jr.; Gentry, Locke, Rakes & Moore,* on brief), for appellants.
*Stephen G. Bass* (*Carter, Craig & Bass,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this workmen's compensation appeal, we review the correctness of an award in favor of a disabled claimant requiring the employer and insurer to pay for care rendered the claimant at home by his wife.

Appellee Charlie E. Chandler, a resident of Danville and employed as a driver by appellant Warren Trucking Company, Inc., was hurt on January 5, 1978, while unloading cargo. He was struck by a heavy piece of furniture and suffered injuries to his head and neck. The employer and its insurance carrier, appellant Liberty Mutual Insurance Company, treated Chandler's claim as compensable and, as authorized by Code § 65.1-93, entered into a memorandum of agreement providing for payment of compensation for general disability at the rate of $175 per week. In a March 1978 award, the Industrial Commission approved the agreement and directed payment of the foregoing amount. The order of the Commission also provided: "Medical benefits are awarded for as long as necessary."

Approximately 19 months later, claimant's attorney notified the Commission in October of 1979 that the parties had been unable to reach an agreement concerning Chandler's claim against the insurer for "home attendant care." Following a February 1980 hearing on that issue, a deputy commissioner denied plaintiff's request for "home sitting expenses." Upon review, the full Commission unanimously decided the claim should be allowed. From the June 1980 award, we granted the employer and insurer this appeal.

The relevant facts are undisputed. The 43-year-old claimant's injury

was first diagnosed as a cerebral concussion. He experienced "a painful neck and back secondary to [the] injury" and, after an initial, brief period of hospitalization, Chandler was confined at home. The claimant has been examined and undergone multiple tests and studies by numerous physicians in the Danville area and in hospitals in North Carolina because of residual dizziness, vertigo and headaches. The condition has been diagnosed as "post-traumatic labyrinthitis." Although during the months following the accident the physicians reported few objective findings to support Chandler's subjective complaints, he has stayed at home and not resumed any type of employment.

On July 5, 1979, Dr. Milton Greenberg, a Danville otorhinolaryngologist, wrote the following, addressed "To Whom It May Concern:"

> This patient has been followed by us since February of 1978 following a head injury. He has had a post-traumatic labyrinthitis. He has been unable to drive during this time, and has had a great deal of difficulty, necessitating his wife staying at home to look after him. She has been unable to work because of his condition.

The claimant sent Dr. Greenberg's note to the insurer. The insurer's representative then wrote the physician:

> Mr. Chandler has sent us a copy of your report of July 5, 1979 concerning his wife looking after him.

> In order for us to reach a decision on our responsibilities for home care, if any, it will be necessary for you to outline the specific problem that Mr. Chandler needs his wife at home with him all of the time.

> Has his need for in home attendant care increased since Feb. of 1978? Is it medically proper for him to be left alone for any length of time? If so, what length of time?

Dr. Greenberg responded on July 16, 1979 to the insurer's inquiry in the following manner:

> I have been seeing this patient at intervals since 13 February 1978. As you know, he was hit in the head by a 300-pound piece of furniture and suffered a concussion. Since that time, I have

been treating him for a post-traumatic labyrinthitis. This has incapacitated him so that he is unable to return to work. He cannot drive and frequently falls. He and his wife both tell me that it is necessary for her to stay at home because of his unsteadiness and the fact that he falls and cannot do anything for himself. He is unable to operate any mechanical equipment.

Following the claimant's application for a hearing, Dr. David G. Dye, a Danville orthopedist, wrote "To Whom It May Concern" in November of 1979 as follows:

> For financial reasons Mrs. Chandler must seek employment and will be unable to take care of her husband. Mr. Chandler presently needs moderate nursing care which his wife is providing. When she becomes employed in another capacity, Mr. Chandler will need someone to look after him during the day. The main reason for care is the frequent 'blackout spells' or syncopal episodes which this patient has along with many episodes of vertigo.
>
> It is also my understanding that the patient has a very low anxiety threshold and has difficulty performing daily activities. For this reason, I think it would be adviseable [sic] that Mr. Chandler have help during the daytime when his wife would be away from home.

Subsequently, and just prior to the February 1980 hearing, the claimant's physicians all wrote on January 9 separate reports as follows: Dr. Greenberg, "From an ear, nose, & throat viewpoint, I can't justify continuous home attendant care"; Dr. Robert A. Kuhn, a Danville neurologist and neurosurgeon, "From a neurological point of view this pt. does *not* need any home attendance"; Dr. Charles A. Whitten, Jr., another Danville neurosurgeon, "As of last exam (when released) I found no physical reason that should require home care"; and Dr. Dye, "From an orthopaedic standpoint *alone* Mr. Chandler does *not* need 24 hour continuous attendent [sic] care."

During the hearing, the claimant's wife testified she had cared for her husband at home since the accident, thus preventing her from obtaining outside employment. She had worked for Dan River Mills for 23 years prior to 1976 when she began riding with her husband during the performance of his duties with the employer. Pursuant to an agreement with the trucking company, the wife accompanied the claimant,

without compensation, "[e]very time he went out" from 1976 to the time of the accident.

Describing the claimant's needs that required her presence at home, the wife testified:

> Well, since the accident and everything that occurred to him and with the vertigo that he does have—the dizzy spells and blacking out, he needs someone in the home to help him with it. He needs someone to help him bathe, shave, I have to help him with putting on the braces. He wears two braces and this nitro thing that he wears; and he also has a hospital bed. I have to prepare his meals. I have to take him to the doctor. He cannot drive. They won't let him drive. I have to do all of the driving. I have to maintain my household after I take care of him.

She further stated:

> For a period of seconds-minutes, he blacks out, he falls, he stumbles and to revive him, I have to, you know, get him out straight, maybe on the floor, elevate his feet to where, you know, the blood can go to his head or break a [sic] ammonia bomb under the nose to revive him like that. And, then, like, if he's staggering, I can hold to him in order to sort of help support him and I help him to the table if he's not able to come to the table and eat. I take his meals to the bedside to him. Sometimes, I help feed him and then again, you take like times that he's not able to get up, there is his medicine to give him. I take his water to the bed; I give him his prescription medicine.

At the hearing, the claimant testified:

> Dr. Dye said that I needed moderate nursing care if I'm going to be left at home alone. And, my wife needs to go to work because of the house payment and our debts—to square them right, keep them straight.

During the hearing, while discussing the issue to be decided, claimant's attorney said no request was being made for any direct payment to the wife. Instead, counsel urged, "We're asking for home attendant care to be provided as an additional medical expense to allow her to leave the home." Consistent with that position, the claimant

presented evidence that the Community Sitters Agency of Danville would provide a "sitter" for $25 per 10-hour day. According to the evidence, the sitter would "assist" claimant in walking, bathing, shaving and reaching the bathroom. In addition, the sitter would prepare claimant's meals, assist in feeding him, if necessary, wash the dishes and administer medication.

In denying claimant's request, the deputy commissioner said the issue to be decided was whether the insurer should be held responsible "for what amounts to babysitting type services for the adult employee." Noting that the wife was not gainfully employed at the time of the industrial accident, the hearing commissioner stated the "thrust" of the claim is that the wife "desires to leave the home to obtain full time employment to augment the family income." Observing that the suggested nursing care had not actually been prescribed by a physician, the deputy stated that "more importantly" the wife was losing nothing by staying home with her husband because she was not employed when he was hurt. The deputy commissioner concluded, "The desire to augment the family income is not adequate basis for these defendants to be held responsible for the sitter expenses which are requested."

Upon review, the Commission said the claim was for payment for practical nursing care, "as distinguished from usual household work," rendered at home by the wife, "who was formerly employed outside the home but has not been employed since her husband's incapacity." The Commission found from the record and medical reports, especially Dr. Greenberg's July 5 letter and Dr. Dye's November note, that the claimant "needs 'moderate nursing care' at home but not on a 'continuous' or '24' hour basis." The Commission said, "It would appear someone is needed to check on the claimant periodically during the day, to assist during baths, adjusting braces, with medicines, etc." Consequently, the Commission reversed the deputy's decision and entered the June 1980 award appealed from "providing for defendants' medical responsibility to provide 'moderate nursing care' at home and with payment therefor provided to [the wife] at the rate of $75.00 per week beginning as of July 1, 1979, with such accrued amount now due in one sum and thereafter each two weeks."

Code § 65.1-88, a part of the Virginia Workmen's Compensation Act (the Act), as pertinent here provides:

As long as necessary after an accident the employer shall furnish or cause to be furnished, free of charge to the injured employee, a physician . . . and *such other necessary medical attention, . . . as the nature of the injury may require,* and the

employee shall accept the attending physician, unless otherwise ordered by the Industrial Commission, and in addition, such surgical and hospital service and supplies as may be deemed nesessary by the attending physician or the Industrial Commission. [Emphasis added.]

On appeal, the employer and insurer contend the Commission engaged in speculation in determining the necessity for, nature of and value of the home care awarded. They say the services provided by the wife do not constitute "other necessary medical attention" within the meaning of § 65.1-88. They also contend specific home care has not been prescribed by any physician nor does the medical evidence otherwise describe the extent of care needed. They also urge there is no evidence to support an award of $75 per week to the wife.

In addition, defendants argue an unemployed member of an injured employee's family is not entitled to payment for services rendered the employee at home. Also, defendants say, the employer and insurer should have control of the home care provided the claimant to ensure maximum recovery in the shortest time. They contend the instant award improperly removes all such control from defendants.

The claimant argues there is credible evidence to support the Commission's finding that medical attention in the form of nursing care is required by the nature of the injury in this case, and that the wife has been providing such care. Thus, claimant contends, the applicable statute requires the employer to provide such care or bear its expense. Observing the award does nothing to remove the employer's ability to select the provider for home attendant care in the future, claimant says the award properly provides payment for services already performed by the wife.

In addition, claimant contends an employable wife may properly be paid for services rendered at home to a husband disabled as the result of an industrial accident, whether or not the wife was working at the time of the injury. Also, assigning cross-error, the claimant says the Commission erred in limiting the amount of the award to $75 per week; he argues the minimum award should have been set at $125 per week.

Although several issues are debated by the parties, we think the dispositive question is whether, under the circumstances of this case, the services performed by this spouse in attending to the needs of the disabled claimant qualify as "other necessary medical attention" within the meaning of Code § 65.1-88. We hold they do not.

In prior cases, we have discussed the general nature of the statute

in question, referring to predecessors of § 65.1-88. We have said the medical attention which the employer is required to furnish and the employee is entitled to receive under the statute is incidental to and a part of the compensation for which the employee is eligible under the Act. *Merrimac Coal Corp.* v. *Showalter,* 158 Va. 227, 231-32, 163 S.E. 73, 74 (1932). Because of the beneficent purposes of the Act, the requirement properly places the cost of such medical attention upon the employer so the employee can be restored to health and eventually to useful employment as soon as possible, to the advantage of the employee as well as the employer. *Immer and Co.* v. *Brosnahan,* 207 Va. 720, 724, 152 S.E.2d 254, 257 (1967). But this is the first time we have been called upon to construe the language "other necessary medical attention" and to decide whether home care rendered by a spouse is covered under the statute.

Ordinarily, nursing services, whether rendered in a hospital or at home, are included among the medical benefits that an employer and insurer must furnish, provided the services are necessary and authorized. *A. G. Crunkleton Electric Co.* v. *Barkdoll,* 227 Md. 364, 370, 177 A.2d 252, 255 (1962); 2 A. Larson, *The Law of Workmen's Compensation,* § 61.13 at 10-469 (1980). The courts are divided, however, when such services have been provided at home by a member of the employee's immediate family who is not a professional nurse. The courts which deny such allowances reason that the services performed constitute a duty arising from the marital relationship and that services between members of a household are presumed to be gratuitously rendered. *Id.; see, e.g., Bituminous Casualty Corp.* v. *Wilbanks,* 60 Ga. App. 620, 621, 4 S.E.2d 916, 917 (1939). Other courts disallow such a claim unless there is a showing that the wife has given up other employment to care for the husband. *See, e.g., Graf* v. *Montgomery Ward & Co.,* 234 Minn. 485, 495, 49 N.W.2d 797, 803 (1951).

Many courts, in more recent cases, have adopted the so-called "modern rule" and permitted allowance for nursing services performed by the claimant's wife on the ground the employer has the affirmative duty, under the several statutory provisions construed in those cases, to furnish this kind of home care. *See, e.g., Oolite Rock Co.* v. *Deese,* 134 So.2d 241 (Fla. 1961); *A. G. Crunkleton Electric Co.* v. *Barkdoll, supra; In Re Klapacs's Case,* 355 Mass. 46, 242 N.E.2d 862 (1968); *Kushay* v. *Sexton Dairy Co.,* 394 Mich. 69, 228 N.W.2d 205 (1975); *Spiker* v. *John Day Co.,* 201 Neb. 503, 270 N.W.2d 300 (1978); *United States Fidelity & Guaranty Co.* v. *Roberts,* 598

S.W.2d 49 (Tex. Civ. App. 1980). *See* Larson at 10-469 to -472. Whether or not the wife relinquished employment to remain at home has not been held, in the later cases, to be a controlling factor when the employer was aware of the claimant's needs and the wife was performing extraordinary services. *See, e.g., Oolite Rock Co.* v. *Deese,* 134 So.2d at 243.

 We generally subscribe to the view of the courts employing the "modern rule." Consequently, under § 65.1-88, we think nursing care at home given a disabled employee by the spouse is allowable, provided the care is "medical attention" and provided it is "necessary." Neither the statute nor the Act defines those terms. Thus, using the approach taken on the subject in other jurisdictions under similar statutory provisions, we think the employer must pay for the care when it is performed by a spouse, if (1) the employer knows of the employee's need for medical attention at home as a result of the industrial accident; (2) the medical attention is performed under the direction and control of a physician, that is, a physician must state home nursing care is necessary as the result of the accident and must describe with a reasonable degree of particularity the nature and extent of duties to be performed by the spouse; (3) the care rendered by the spouse must be of the type usually rendered only by trained attendants and beyond the scope of normal household duties; and (4) there is a means to determine with proper certainty the reasonable value of the services performed by the spouse. *See In Re Klapacs's Case,* 355 Mass. at 50, 242 N.E.2d at 864-65; *Spiker* v. *John Day Co.,* 201 Neb. at 519, 270 N.W.2d at 309.

The application of the foregoing rule is illustrated by the decision in *Klapacs's Case.* There, in 1954 the employee sustained in an industrial accident retinal hemorrhages and a myocardial infarction. As a result, he became legally blind. After 1957 he developed other nonemployment-related disabilities. In 1965 the wife, a trained physiotherapist and a licensed masseuse, sought payment for nursing services rendered from 1954. The Industrial Accident Board allowed payment of $46,500 to cover the period from 1954 to 1967.

The evidence showed that the services performed by the wife, attributable to the compensable disability, involved administering medicines, preparing six small meals a day for a salt-free diet, dressing and undressing the employee who remained out of bed four to five hours at a time, massaging, conducting him around the house, and accompanying him wherever he went. After a lower court dismissed the claim on appeal, the Supreme Judicial Court of Massachusetts, construing its statute which required the employer to furnish an

injured employee "adequate and reasonable medical and hospital services . . . together with the expenses necessarily incidental to such services," 355 Mass. at 49, 242 N.E.2d at 864, decided that most of the services performed by the wife were not medical services. The court said:

> We assume that the giving of particular medicines may in extraordinary cases be such a precise or hazardous procedure as to require the services of a trained attendant. That does not appear here. Neither dressing and undressing the employee nor accompanying him because of his blindness nor preparing frequent salt free meals is in the category of expert services. That the attending physician gave the wife instructions as to medicines, diet, and care does not make her work in carrying out the instructions nursing services or medical services. The wife, it is apparent, has been greatly burdened by her husband's illness and has faithfully done all the multitude of extra things that needed to be done. Had she not been there, . . . paid care would have been required. This is equally true in the many cases where ill, infirm, elderly persons are cared for by their spouses. That paid care would have been the alternative, absent the spouse, does not bring the services within the statute.

355 Mass. at 50, 242 N.E.2d at 865. After finding in effect that the services were not beyond the normal household duties, the court went on to also hold that, with one exception, the evidence failed to show that medical services were rendered under the direction and control of a physician. The case was remanded to the compensation board for a determination whether, as the record indicated, a physician had in fact prescribed massaging to aid circulation, knowing the wife was especially competent to give massage, in which case such services would be compensable.

Turning to the present case, the claimant has met the first and fourth requirements set out above. The employer knew of the employee's need for home care, and the reasonable value of the care was proved with proper certainty. But the claimant failed to meet the second and third requisites.

Even if we assume Doctors Greenberg and Dye tacitly approved the care being given the claimant by his spouse, the record is devoid of any evidence to show those physicians, or any others, described for the wife any "medical attention" that was "necessary" for the employee. In essence, the doctors merely reported information that Chandler

and his wife submitted and, in Dr. Dye's case, only concluded the claimant needed "moderate nursing care which his wife is providing." Such a conclusion is not a direction that necessary medical attention be administered.

Furthermore, the care rendered by the wife was not beyond the scope of normal household duties. According to the evidence, the care consisted of bathing, shaving, feeding, assistance in walking, help with braces, aid upon falling, driving and administering routine medication. None of these duties, when considered in the light of the claimant's condition and the extent of his disability, is of the type usually rendered only by trained attendants.

As in *Klapacs's Case,* the wife faithfully has been performing the many extra tasks needed to assist her husband. Now, she would like to obtain employment to improve the family's economic condition. But those factors do not bring the services she performs within the scope of "necessary medical attention" as contemplated by § 65.1-88.

For these reasons, we hold the Commission's award is erroneous. Consequently, the judgment appealed from will be reversed and the claimant's application will be dismissed.

*Reversed and dismissed.*