2005 OK CIV APP 32

**OKLAHOMA GAS & ELECTRIC CO., Petitioner,**

v.

**Christopher Charles CHRONISTER, The Workers' Compensation Court, Respondents.**

**No. 100,016.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 2, 2004.

Rehearing Denied Jan. 11, 2005.

Certiorari Denied May 2, 2005.

Gary D. Long, Wheeler, Wheeler, Morgan, Faulkner, Long & Donaldson, Bethany, OK, for Petitioner.

Laura Beth Murphy, Murphy & Murphy, Oklahoma City, OK, for Respondent Christopher Charles Chronsiter.

## OPINION

ADAMS, Judge:

¶ 1 Oklahoma Gas & Electric Co. (Employer) seeks review of an order of a three-judge panel of the Workers' Compensation Court which modified and affirmed a trial judge's order. The order, as modified, awarded Claimant Christopher Chronister temporary total disability benefits and resolved other disputes between the parties concerning home health care reimbursement and medical apparatus. We vacate the portion of the order relating to home health care reimbursement because the present record contains no competent evidence to support the order. In all other material respects, we sustain the remainder of the order.[1]

___

1. We do vacate two other portions of the order which are of no consequence to the ultimate

## FACTS

¶ 2 Claimant, a lineman, suffered electrocution on June 5, 2002, and fell some 30 feet to the ground. He sustained injuries to his head, left leg, right leg, intestines, heart, right side ribs, thoracic spine, lumbar spine, bladder, bowel, spinal cord, and pulmonary system, with a psychological overlay, paralysis (paraplegia), and spasticity of the left arm, right arm, left hand and right hand. Claimant received extensive medical care and therapy at several facilities and had surgery on both his arms and hands and twice on his back.

¶ 3 Prior to May 27, 2003, Employer provided a rented handicap-equipped van (van) to Claimant for transportation for his many medical appointments. Claimant also used the van for other tasks and personal activities. During this same time period, Employer also provided home health care for 8 to 10 hours a day. Claimant went to Phoenix, Arizona for treatment at Neurostrength Institute on May 20, 2003, and returned to Oklahoma on June 27, 2003. Employer did not provide the van or home health care during this period.

¶ 4 After his return, rather than providing the van for Claimant's use, Employer hired Airport Express to transport Claimant to his doctor and physical therapy visits. Employer also provided home health care for four hours a day, as prescribed by Claimant's doctor. Claimant filed a request that total disability benefits (TTD) be continued and that Employer be ordered to provide the van and other medical apparatus in addition to reimbursing Claimant for his wife's services in providing home health care while Claimant was in Arizona.

¶ 5 The trial judge awarded Claimant TTD and reserved the issue of permanent disability. The trial judge also ordered Employer to provide reasonable and necessary medical care and treatment with Dr. A.J. Bisson. The trial judge ordered Employer to resume providing Claimant with the van. In addition, the trial judge found Employer owed

result.

Claimant for home health services from May 20, 2003, through June 27, 2003, and directed that Claimant receive home health services from June 27, 2003, forward "consistent with the recommendations of Dr. A.J. Bisson as expressed by way of deposition." The trial judge also found that the medical services provided by the Neurostrength Institute in Arizona were "reasonable."

¶ 6 Employer filed a notice of an *en banc* appeal. After what Employer characterizes as an *ex parte* communication between the trial judge and Claimant's counsel which occurred more than ten days and less than twenty days after the trial judge's order was filed, the trial judge filed a "nunc pro tunc" order which modified certain portions of its previous order and also directed Employer to provide Claimant with an FES bike. The bike issue was addressed during the trial but not in the trial judge's previous order.

¶ 7 After receiving a copy of the "nunc pro tunc" order and learning from Claimant's counsel that she had talked to the trial judge, Employer's counsel wrote a letter to the trial judge objecting to the issuance of the order. At a hearing thereafter, the trial judge and Claimant's counsel confirmed that more than ten days after the original order was filed, without notice to Employer, Claimant's counsel approached the trial judge with the original order and the court file and asked that the issue unaddressed by the original order be addressed.

¶ 8 At that hearing, the trial judge recalled that the file had been presented to her and the request made, but stated "that there was no discussions regarding the substantive matters. Who should win, who should lose, what evidence was offered, anything of substance that would affect the judgment of the Court. No additional evidence was offered to the Court" and concluded that "there has not been an ex parte communication regarding the substance of the matter, the issues before the court." The trial judge noted that Claimant's counsel should have advised that opposing counsel had not been consulted and apologized to Employer's counsel for failing to inquire. Claimant's counsel acknowledged she should have contacted Employer's counsel, and she apologized to the trial judge.

¶ 9 The trial judge left the "nunc pro tunc" order undisturbed, and Employer supplemented its *en banc* appeal to raise issues concerning this order, including the medical necessity of the FES bike. After making minor modifications to the trial judge's order, the three-judge panel affirmed the order, including the provisions added and altered by the "nunc pro tunc" order, specifically concluding that Employer's request to vacate that order should be denied. Employer then filed this review proceeding.

## ANALYSIS

¶ 10 In these review proceedings, Employer urges that we vacate the three-judge panel's order, arguing error in the findings which may be described as centering on three main issues: (1) Employer's obligation to provide Claimant with the van, (2) the home health services and equipment required for his condition, and (3) the communications preceding entry of a *nunc pro tunc* order and an award of an FES bike in that order. As to the first two issues, the parties agree that Claimant is entitled to receive what is "medically necessary," but disagree about what treatments, items, and benefits fall into that classification. We address the three issues in turn.

### The Van

¶ 11 Employer argues that requiring it to provide Claimant with the van is contrary to prevailing law, that provisions of the order finding Claimant does not have the financial means to purchase a vehicle are not supported by any competent evidence, and that the finding Claimant is not required to purchase a vehicle for modification is not an accurate statement of the law. Employer claims it has no duty to supply transportation that is for Claimant's personal needs unrelated to receiving medical treatment.

¶ 12 Employer states that it provided Claimant with the van after his discharge from the hospital because he had numerous appointments for intensive treatments with doctors and physical therapists and providing the van was the most practical and efficient option (as opposed to using a van service for

each appointment) at that time. Since then, Employer states, Claimant's needs have changed, and though it will provide transportation for medical treatment, it is not required to make transportation available for personal needs and discretionary travel, citing Rule 19A, Workers' Compensation Court Rules, 85 O.S.2001, Ch. 4, App., which states:

> Travel expenses incurred while receiving reasonable and necessary medical treatment, vocational evaluations, and vocational retraining shall be paid to the claimant as follows: Mileage and necessary lodging expenses are limited to the provisions of the State Travel Reimbursement Act, 74 O.S., Section 500.1 et seq. .... Travel expenses paid to the claimant shall include only expenses for travel from the residence of the claimant at the time of medical treatment, not to exceed 600 miles round trip. The employer shall not be liable for travel which is wholly within the limits of the city or town of the claimant's residence. Exceptions to this rule shall be at the discretion of the Court.

¶ 13 However, Employer fails to properly consider the effect of 85 O.S.2001 § 14(A)(1), which requires an employer to "promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary after the injury." The purpose of this obligation is provide care which will "reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury" and rehabilitate the employee so that he or she "may return to the ranks of productive labor with normal capacity when possible, and when impossible to restore normal capacity then to the highest degree attainable" in addition to temporary relief. *Orrick Stone Company v. Jeffries,* 1971 OK 116, ¶ 5, 488 P.2d 1243, 1245, quoting *McMurtry Bros. v. Angelo,* 1929 OK 480, ¶ 7, 281 P. 964, 965.

¶ 14 The record contains competent medical evidence that Claimant's independence enabled by the van would not only benefit Claimant's general lifestyle but was essential to his rehabilitation and treatment of the organic brain injury and accompanying psychological overlay. Although the panel's or-

der may sweep too broadly to the extent it suggests that *any* paraplegic claimant would qualify for such assistance under § 14(A)(1), the conclusion that such assistance fulfills the purpose behind § 14(A)(1) for *this Claimant* is supported by the medical evidence in this record.

¶ 15 *Phillips Petroleum Company v. Carter,* 1995 OK CIV APP 138, 914 P.2d 677, noted the rule that modification or substitution of an automobile in order to accommodate a wheelchair could be awarded as "other apparatus." The Court in *Carter* considered what evidentiary basis was necessary to establish a medical need for vehicle modification, and concluded, citing *Zwahlen v. B.F. Goodrich,* 1988 OK 54, 755 P.2d 658, that a doctor's recommendation indicated a reasonable medical necessity for making the apparatus available.

¶ 16 Employer does not challenge the holding or reasoning of *Carter,* but claims that *Carter* is distinguishable because Claimant does not seek vehicle modification but 24–hour use of a van *via* a rental paid for by Employer, essentially modification plus the vehicle itself. Such an argument is unavailing, particularly in view of the *Carter* Court's reliance on *Terry Grantham Company v. Industrial Commission of Arizona,* 154 Ariz. 180, 741 P.2d 313 (Ct.App.1987). In affirming an order which required the employer to pay the cost of a modified van, the Court rejected any blanket rule that only modifications to an employee-purchased van could be considered "apparatus," and concluded on the circumstances of that case that the van itself could properly be considered "apparatus." A similar approach is appropriate here.

¶ 17 We are charged with examining the record to determine if there is competent medical evidence supporting the order of the Workers' Compensation Court and must not re-weigh the evidence but must sustain the order if such evidence was presented. The issue of necessity of medical treatment or equipment is a question of fact for the trial tribunal. *Iwunoh v. Maremont Corporation,* 1984 OK 8, 692 P.2d 548. This record contains evidence supporting the conclusion that the availability of a handicap-

equipped van which Claimant may drive not only to his medical appointments but for other purposes was a necessary part of the rehabilitation and medical treatment program for the injuries he sustained. The portion of the order awarding the van rental is sustained.

### Home Health Care

¶ 18 Employer claims error in those portions of the order finding Claimant was entitled to home health care services during his trip to Arizona for treatment at the Neurostrength Institute and which ordered that the payments be made to Claimant rather than to the one providing such services. Employer further argues that ordering that home health services be paid for at the same rate as such services were provided during the period of January through April of 2003, is not supported by any competent evidence.

¶ 19 Employer notes that although it had provided home nursing services in early 2003, despite no · written direction from a physician for such services, this time period coincided with when Claimant's arms were casted or bandaged following surgeries and that those impediments were gone by the time he traveled to Arizona. That being so, Employer argues, the Workers' Compensation Court order that Claimant be paid for the value of such services for the time he was in Arizona at a rate equivalent to that it provided in early 2003 is unsupported by evidence as to medical necessity.

¶ 20 Claimant testified that he needed help transferring from his wheelchair while on his trip to Arizona. He and his wife testified that she assisted him with transfers in and out of vehicles, bed, and a shower. Although Claimant's wife testified that she assisted him "twenty-four hours a day, seven days a week the whole time we were out in Ari-

zona," [2] there was no evidence presented quantifying how much care she rendered which could qualify as medically necessary attendance.

¶ 21 Such services may be authorized under § 14(A)(1). This statute focuses on the nature of the services Employer is required to provide, not the status of the provider of the service or whether the provider has a familial relationship to an injured worker. Depending upon the attendant services medically needed, Claimant's wife may qualify to deliver those services. *Oil Well Cementers, Inc. v. Thompson,* 2004 OK CIV APP 4, 82 P.3d 125; *Wilson Paving, Inc. v. Abernathy* 2003 OK CIV APP 72, 76 P.3d 103.

¶ 22 As have the courts of several other jurisdictions,[3] we conclude that criteria described in *Warren Trucking Company, Inc. v. Chandler,* 221 Va. 1108, 277 S.E.2d 488, (1981), provide an appropriate framework for determining whether an injured worker may receive workers' compensation benefits for the home health care performed by a spouse. As those criteria apply under Oklahoma law, an employer must pay for home health care performed by the spouse of an injured worker when: (1) the employer knows of the need for home health care as a result of a work-related injury, (2) a physician recommends the home health care as medically necessary as a result of the work-related injury and describes with a reasonable degree of particularity the nature and frequency of the duties the spouse will perform, (3) the home health care the spouse will perform is of the type usually performed by trained attendants and is beyond the scope of normal household duties, and (4) there is evidence of the reasonable value of the services to be performed by the spouse.

---

2. Employer also claims error in the paragraph finding that Claimant's wife took a leave of absence from work. She did so testify. However, it is not relevant to the issues before the Workers' Compensation Court that she left a job, because medical necessity, not her leave of absence, is the proper basis for awarding home health services.

3. *See Pickens–Bond Construction Co. v. Case,* 266 Ark. 323, 584 S.W.2d 21 (1979); *Oolite Rock Co. v. Deese,* 134 So.2d 241 (Fla.1961); *In re Kla-*

*pacs's Case,* 355 Mass. 46, 49, 242 N.E.2d 862 (1968); *Kushay v. Sexton Dairy Co.,* 394 Mich. 69, 228 N.W.2d 205 (1975); *Ross v. Northern States Power Company,* 442 N.W.2d 296 (Minn. 1989); *Carlson v. Cain,* 216 Mont. 129, 700 P.2d 607 (1985); *Spiker v. John Day Co.,* 201 Neb. 503, 270 N.W.2d 300 (1978); *St. Clair v. County of Grant,* 110 N.M. 543, 797 P.2d 993 (N.M.App. 1990); and *Close v. Superior Excavating Co.,* 166 Vt. 318, 693 A.2d 729 (1997).

¶ 23 This record is deficient regarding the extent to which home health services were medically necessary during the trip to Arizona or that Claimant required attendance at the same level as prior to the Arizona trip. That portion of the order requiring Employer to pay Claimant for home care attendance at the same rate and level as prior to the Arizona trip is vacated and the matter is remanded for reconsideration under the criteria here described.

### The *Nunc Pro Tunc* Order

¶ 24 Employer argues that the trial judge violated applicable rules by issuing an order *nunc pro tunc* on August 18, 2003, more than ten days after the original order was filed, after *ex parte* communication with Claimant's counsel without notice to Employer's attorney or an adversary hearing. According to Employer, it was unfair for the Workers' Compensation Court to violate its rules and require it to furnish the expensive equipment because this shifted the burden from Claimant, who had not filed an *en banc* appeal, to request review from the Oklahoma Supreme Court. Because the three-judge panel affirmed the *nunc pro tunc* order, Employer argues, it was burdened with challenging the award of the expensive equipment at the appellate courts and with meeting a different standard of review than that used by the *en banc* court. Employer also argues the order regarding the FES Bike is not supported by any competent evidence.

¶ 25 We agree that an *ex parte* communication occurred, but must otherwise disagree with Employer's analysis. Rule 6, Workers' Compensation Rules, 85 O.S.2001, Ch. 4, App., states that "[p]arties ... shall have no ex parte communications with the assigned trial judge regarding the merits of a specific matter pending before the assigned judge of the Workers' Compensation Court."

¶ 26 At the time of the communication here, an order had been issued and Employer's request for review had been filed with the three-judge panel, but the order was not final and the matter was "pending before the assigned judge" due to the litigated but unadjudicated issues. Although Claimant no longer could request *en banc* review, the order was not final and a review proceeding in the Oklahoma Supreme Court would have been timely. The communication about unaddressed issues, while not suggesting a course of action, did indeed address the merits of Claimant's claims. Therefore, the finding that no *ex parte* communication occurred must be vacated. However, the prejudicial impact of that communication remains to be determined.

¶ 27 At least with regard to the order to furnish the FES bike, we are unable to determine any prejudice. Employer's argument is premised upon the assumption that the original order's silence on the FES bike issue constituted a denial. This assumption is not valid. *The original order's silence may be treated as a denial only if the order is allowed to become final. See Brown v. NCI, Inc.,* 2000 OK CIV APP 78, 8 P.3d 195. At the time the second order was filed, Claimant's time to commence an action in the Oklahoma Supreme Court to require the trial judge to address the FES bike issue had not expired. Other than whatever speculative advantage Employer may have lost by Claimant not being required to commence that original proceeding, Employer was not prejudiced by the *ex parte* communication insofar as the submitted but unadjudicated issue is concerned.[4]

¶ 28 While there was no written application for a *nunc pro tunc* order "followed by an adversary hearing set upon notice to the opposite parties" as provided for in Rule 39(B), Workers' Compensation Court Rules, 85 O.S.2001, Ch. 4, App., the action of the trial court did not, strictly speaking (and despite being so titled), involve a *nunc pro tunc* order because it addressed an unadjudicated but litigated issue *which was not final,*

---

4. There is no doubt on this record that the FES bike issue was submitted by the parties and not reserved. Accordingly, if the trial judge's order had not been supplemented to address this issue, an original proceeding complaining of this omission would have been successful. *See Frair v.*

*Sirloin Stockade, Inc.,* 1981 OK 117, 635 P.2d 597, in which the Court remanded the case for entry of an order expressly addressing claimed injuries which were not addressed in the order under review.

rather than correcting the original order to reflect an inaccurately recorded ruling of the trial court.

¶ 29 However, we are also cognizant that "[a]ny compensation order, other than one by default, which vacates a prior decision without notice and adversary hearing, constitutes a denial of due process and is void." *Snyder v. Smith Welding & Fabrication,* 1986 OK 35, ¶ 5, 746 P.2d 168, 170. As a consequence, the portions of the *nunc pro tunc* order vacating paragraphs 13 and 17 were void and of no effect,[5] but the addition of paragraph 13A, which awards the FES bike, does not suffer from the same infirmity.

¶ 30 The provisions awarding the FES bike are supported by competent medical evidence in the record. Though Employer may disagree that the equipment is medically necessary, we will not re-weigh the Workers' Compensation Court's apparent assessment of and acceptance of the medical testimony's claims that it will help preserve muscle tone, help bowel and bladder function and slow loss of bone density, all of which are medical concerns for one with paraplegia. The award of the FES bike is sustained.

## CONCLUSION

¶ 31 The portion Workers' Compensation Court order awarding compensation for home health care during period Claimant was in Arizona is vacated because it is not supported by any competent evidence. After remand, the Workers' Compensation Court shall receive additional evidence and apply the criteria described herein to determine the appropriate home health services for which Employer is responsible for the period which Claimant was being treated at Neurostrength Institute. The finding that no *ex parte* communication occurred prior to entry of the August 18, 2003 order by the trial court is vacated as contrary to law, as is the portion of the panel's order sustaining those portions of the August 18, 2003 order which

vacated paragraphs 13 and 17 of the trial court's July 31, 2003 order. In all other respects, the order of the three-judge panel is sustained.

SUSTAINED IN PART, VACATED IN PART AND REMANDED.

JONES, J., concurs.

BUETTNER, V.C.J./P.J., concurring in part, dissenting in part:

I agree with the majority opinion except for the decision regarding the van. I am not convinced that 85 O.S.2001 § 14(A)(1) provides authority to compel an employer to provide a van under the term "apparatus as may be necessary after the injury."

---

5. The effect of that conclusion, need not be further analyzed. The *nunc pro tunc* order vacated paragraphs 13 and 17 and substituted new paragraphs of the same numbers which made some additions to the original text. The addition to paragraph 17, regarding the services at Neurostrength Institute in Arizona, stated those services "provided benefit to the claimant," while the text change in paragraph 13 added the information that Dr. Bisson's deposition was taken "JUNE 26, 2003 (admitted into evidence as Claimant's Exhibit # 4)."