2004 OK CIV APP 4

**OIL WELL CEMENTERS, INC. and Petrosurance Casualty Company, Petitioners,**

v.

**Dale THOMPSON, Jr. and the Workers' Compensation Court, Respondents.**

**No. 99,429.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Dec. 4, 2003.

Michael C. Bell, J. Heath Lofton, McGivern, Gilliard & Curthoys, Tulsa, OK, for Petitioners.

Greg Barnard, The Bell Law Firm, Norman, OK, for Respondent.

LARRY JOPLIN, Chief Judge:

¶ 1 Petitioners Oil Well Cementers, Inc. and Petrosurance Casualty Company (collectively, Employer) seek review of the trial court's order granting benefits for permanent total disability (PTD) to Respondent Dale Thompson, Jr. (Claimant). In this proceeding, Employer complains the trial court (1) erred in directing Claimant to reimburse Employer "the sum of $9,500.00 previously paid as an advance against any later award of permanent partial disability" (PPD) because, pursuant to the award for PTD, no further benefits for PPD will be paid; and (2) exceeded its authority in directing Employer to reimburse Claimant for personal aide services provided by Claimant's wife. Having reviewed the record, however, we discern no errors as alleged, and hold the trial court's order should be sustained.

¶ 2 Claimant asserted compensable single-event and consequential injuries arising out of and in the course of his employment with Employer in April 1996. After a trial in July 1996, the Workers' Compensation Court determined Claimant sustained compensable injuries to his head, neck, and low back, and awarded benefits for temporary total disability (TTD) and continuing medical treatment.

¶ 3 Employer appealed, and a three-judge panel affirmed. Upon further review, the Court of Civil Appeals by unpublished decision sustained the order of the three-judge panel as supported by competent evidence. *Oil Well Cementers, Inc. v. Thompson,* Case No. 88,459 (Ok. Civ.App. Div. I, April 15, 1997).[1],[2] In April and December 1998, the Workers' Compensation Court subsequently issued orders extending benefits for TTD.

¶ 4 In February 2003, the parties appeared for trial on the issues of, inter alia, occurrence and cause of the alleged consequential injuries, psychological overlay, sexual dysfunction and disfigurement; extent and period of attendant disability, whether temporary or permanent, partial or total; necessity of continuing medical treatment, including in-home health care; and, reimbursement for in-home health care which Claimant's wife quit her regular employment to provide.

¶ 5 At trial, Claimant testified to his partially paralyzed condition after neck surgery in October 1997 and consequent confinement to a wheelchair; his need for assistance, e.g., to exit/enter a vehicle, load/unload his wheelchair, stand, sit, dress, use the toilet, and bathe; his discomfort and/or inability to administer various treatments for his job-related injuries to himself; and, his reliance on his wife to assist him in most aspects of his everyday living. Claimant's wife corroborated Claimant's testimony concerning his impaired state and need for extensive assistance in everyday living; testified that she quit her employment after the October 1997 surgery to minister to Claimant's now-paraplegic needs; and, asserted that she rendered the necessary assistance to Claimant in addition to performing her regular household duties and parenting the parties' three children.

¶ 6 In support of his position, Claimant offered, and the trial court admitted over employer's probative value objection, medical evidence argued to show wife's assistance "in every aspect of [Claimant's] daily living"; his need for a "twenty-four hour aide" "in the absence of [his] wife"; and wife's provision of "services for her husband in lieu of an aide or LPN," including the administration of necessary medical treatments.[3]

¶ 7 On consideration of the evidence, the trial court determined:

<hr>

1. Op. by Joplin, J.; Hansen, P.J., and Buettner, J., concurring.

2. Mandate issued, May 15, 1997.

3. Particularly, penile injections and use of suppositories.

THAT on April 4, 1996, .... claimant sustained accidental personal injury to the NECK, BACK, AND HEAD WITH CONSEQUENTIAL PSYCHOLOGICAL OVERLAY, CONSEQUENTIAL SEXUAL DYSFUNCTION, AND CONSEQUENTIAL INJURY TO THE LEFT HIP, AND RIGHT HIP (DONOR SITES) arising out of and in the course of claimant's employment.

. . .

THAT **solely** as a result of said injury, claimant is TOTALLY AND PERMANENTLY DISABLED ... therefore [Employer] shall pay [C]laimant compensation ... from SEPTEMBER 30, 2001 and continuing until further order of this Court, 86 weeks and 4 days have accrued and shall be paid in lump sum....

. . . .

THAT the [C]laimant is directed to reimburse the [Employer] the sum of $9,500.00 previously paid as an advance against any later award of [PPD].

. . . .

THAT [Employer] is directed to reimburse the claimant for personal aide services provided by claimant's spouse from DECEMBER 10, 1997 to JUNE 1, 1999, and from JULY 1, 1999 to FEBRUARY 24, 2003, at a rate of $8.00 per hour, 12 hours per day, 7 days per week ($672.00 per week). During this period of time, the claimant's spouse was prohibited from performing work outside of the home to care for her husband as no other person was made available to assist the claimant in the essential functions of living. The services performed were in the nature of that customarily performed by a personal aid or caretaker.

THAT the Court has specifically determined that in the State of Oklahoma no license is required for a person to perform the services customarily performed by a personal aid or caretaker.

THAT [Employer] is directed to reimburse the claimant for personal aide services provided by the claimant's spouse from FEBRUARY 24, 2003 and CONTINUING at a rate of $8.00 per hour, 2 hours per day and 7 days per week until further order of the court.....

Employer now seeks review in this Court.

¶ 8 In its first proposition (without citation of authority), Employer complains the trial court erred in directing Claimant "to reimburse [Employer] the sum of $9,500.00 previously paid as an advance against any later award of" PPD. Here, Employer argues that because the trial court adjudicated Claimant entitled to benefits for permanent *total* disability, Claimant will never receive "any later award" for permanent *partial* disability from which to reimburse Employer for the advance. So, says Employer, the order of the trial court must be "reformed" such that "said advance should be 'reimbursed' by the Claimant from the accrued portion of the [PTD] benefits."

¶ 9 However, the trial court's order merely describes the circumstances surrounding the original advance, i.e., that Employer advanced Claimant a sum on the expectation that Claimant would, at the very least, receive an award for PPD, and directs Claimant to reimburse Employer for the advance. We read nothing in the trial court's order which restricts the source of Claimant's reimbursement obligation to *only* permanent partial disability benefits as Employer avers.

¶ 10 In its second proposition, Employer argues that the home health care services provided to Claimant by his wife do "not qualify as medical attention" for which it is bound to pay under 85 O.S. § 14(A). In its third proposition, Employer argues the Workers' Compensation Court lacked authority to direct reimbursement "for personal

and/or normal household duties performed by a family member." *See, e.g., Quinn v. Archbishop Bergan Mercy Hospital,* 232 Neb. 92, 439 N.W.2d 507, 510, 511 (Ne.1989).[4]

¶ 11 The law in effect at the time of the injury controls a claimant's right to compensation. See, e.g., 85 O.S. Supp.1994 § 3.6(F)[5]; *Special Indem. Fund v. Archer,* 1993 OK 14, 847 P.2d 791; *Knott v. Halliburton Services,* 1988 OK 29, 752 P.2d 812. At the time of Claimant's injury (and now), § 14(A) of title 85 held (and holds) an employer liable for its worker's reasonable "medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may be necessary after the injury." 85 O.S. Supp.1994 § 14(A). Now see, 85 O.S.2001 § 14(A).

¶ 12 Scarcely four months ago, the Court of Civil Appeals addressed and rejected the precise challenges raised by Employer in the present case. *Wilson Paving, Inc. v. Abernathy,* 2003 OK CIV APP 72, 76 P.3d 103. In *Wilson Paving,* the Court of Civil Appeals held that where a family member provides in-home care that would otherwise be provided by a professional, such care fell within the "other attendance" language of § 14(A):

> Claimant's parents provide the care that would otherwise be provided by an in-home nurse. We decline to interpret the statute so narrowly that it would limit "other attendance" to *licensed* health care providers. If a non-nurse, especially a parent or other family member, is capable and willing to provide home nursing care then that should be acceptable and, in our view, is contemplated by the statute. "[O]ther attendance" is not defined in or limited by the statute. This implies an understanding that the spectrum of care needed by injured employees is probably as varied as the injuries employees receive. As long as the care being provided is equivalent to some type of medical or health care it should make no difference

that a parent is the care provider. Therefore, compensation for such care, whether by parents, guardians, or medical personnel, is proper. The Compensation Court's conclusion was correct and the services provided by Claimant's parents are within the meaning of the medical care set out in 85 O.S.2001 § 14(A). . . .

2003 OK CIV APP 72, ¶ 7, 76 P.3d at 105. (Emphasis original.)

¶ 13 In the present case, Claimant presented competent evidence that, in virtually every aspect of his every day living, he required in-home care and assistance, which, if rendered by a professional, would be considered necessary medical treatment or "other attendance" contemplated by § 14. Claimant also presented competent evidence of the value of those services if rendered by a professional. Claimant further presented competent evidence that his wife provided the in-home care, which, in her absence, a professional would have been required and hired to perform, and that his wife rendered him his necessary care in addition to performing her normal household and parenting duties.

¶ 14 On this evidence, the trial court held "[t]he services [wife] performed were in the nature of that customarily performed by a personal aid or caretaker," and that no license was required to provide those services. The trial court consequently directed Employer to reimburse Claimant for the value of the in-home care services previously rendered by his wife at the rate of $8.00 per hour for twelve hours per day, seven days per week, for that "period of time claimant's spouse was prohibited from performing work outside of the home to care for her husband as no other person was made available to assist the claimant in the essential functions of living." The trial court also directed Employer to reimburse Claimant for the value of his wife's continuing in-home care to be rendered in the future at the rate of $8.00 per

---

4. "In determining what care is compensable by the injured claimant, this court has distinguished between care which is medical, and therefore recoverable, and purely custodial or housekeeping services, which are not recoverable"; "The Workers' Compensation Court determined that the services performed by the home health care providers were normal housekeeping services and were not medically necessary[,] ... [and] [s]ince there is evidence supporting the compensation court's judgment, the judgment is affirmed."

5. Now see, 85 O.S.2001 § 3.6(F).

hour for two hours per day, seven days per week.

¶ 15 Having reviewed the record, we hold the trial court committed no legal error in directing Employer to pay for wife's in-home care of Claimant as a reasonable and necessary "other attendance" expense under § 14(A). *Wilson Paving, Inc.,* 2003 OK CIV APP 72, ¶ 7, 76 P.3d at 105. We further find competent evidence to support the trial court's determination of the value of those services performed by wife above and beyond her usual "household duties." *Wilson Pav-*

*ing, Inc.,* 2003 OK CIV APP 72, ¶ 8, 76 P.3d at 105–106.

¶ 16 The order of the trial court is therefore SUSTAINED.

ADAMS, P.J., and BUETTNER, J., concur.