## James Close v. Superior Excavating Co.

[693 A.2d 729]

No. 96-072

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.), Specially Assigned**

Opinion Filed March 28, 1997

*Leighton C. Detora* of *Valsangiacomo, Detora & McQuesten, P.C.*, Barre, for Plaintiff-Appellee/Cross-Appellant.

*John A. Serafino* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Johnson, J.** Employer Superior Excavating appeals a decision of the Commissioner of the Vermont Department of Labor and Industry requiring payment of workers' compensation benefits for nursing services provided by claimant's spouse. Claimant cross-appeals the measure of benefits awarded by the Commissioner. We affirm.

In October 1988 claimant suffered a severe head injury during an accident at work. Following a lengthy hospital stay, he returned home

to live with his spouse and children at the end of March 1989. As a result of his injury, claimant was subject to intermittent seizures, severe disorientation, and short-term and long-term memory loss. Claimant required supervision twenty-four hours a day. He was not able to take medication on his own, could not prepare his meals, and could not dress himself without assistance. He had behavioral problems, including uncontrollable crying and bursts of anger. He was also subject to seizures, including several grand mal seizures in the first year or two after his injury. Claimant often wandered and would leave the house if not watched closely; at least once the police were called to help locate him. This wandering occurred at all hours of the day and night.

Despite the concern of his physicians about his spouse's ability to provide full-time care, claimant remained at home under her care for the next five years. Claimant's spouse was assigned a number of tasks by her husband's physicians. She administered and monitored his medications and was authorized to alter the doses in certain circumstances. For a period of months she kept a log of her husband's behavior for his physicians. She was also charged with monitoring her husband's seizure activity and responding appropriately. In February 1993, claimant's spouse agreed to accept some assistance in caring for her husband. From June 1993 until March 1995, claimant was in an adult day-care program three days a week and received eight hours a month of home-care assistance. In December 1994, employer's insurer began searching for a permanent residential placement for claimant, and in March 1995 he was admitted to an assisted-living facility where he has since resided.

Claimant filed a claim seeking compensation for nursing services provided by his spouse for the period between his discharge from the hospital in March 1989 and his admission to a permanent care facility in March 1995. Following a hearing, the Commissioner ordered the employer to pay claimant the sum of $207,312.40 for nursing services, as well as costs and attorney's fees. This appeal followed.

On appeal employer argues that the care provided by claimant's spouse was not nursing services within the meaning of 21 V.S.A. § 640. Employer also argues that even if the services are compensable under § 640, claimant should not be paid for services provided prior to February 1993, because claimant failed to request services prior to that date. On cross-appeal, claimant argues the Commissioner should have ordered compensation at the rate of $18.00 per hour, rather than using an average of the prevailing minimum wage during the years in question, $4.10 per hour.

## I.

■ We first address employer's claim that the Commissioner erred in finding that the services provided by claimant's spouse were nursing services compensable under 21 V.S.A. § 640. We presume that decisions made within an administrative agency's area of expertise are correct, valid, and reasonable, absent a clear showing to the contrary. *In re New England Tel. & Tel. Co.*, 159 Vt. 459, 462, 621 A.2d 232, 235 (1993). When, as here, the question on appeal is one of statutory construction, this Court defers to an agency's interpretation of statutes it is empowered to enforce. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 452 (1990).

The Commissioner found that claimant's spouse provided nursing services through the administration and monitoring of medications and through monitoring and assistance during seizures. The Commissioner also found that this care was needed on an on call basis, requiring twenty-four-hour attendance. The eventual placement of the claimant at a full-time residential facility, paid for by the employer, confirmed this finding.

The relevant statute requires an employer to "furnish reasonable surgical, medical and nursing services." 21 V.S.A § 640(a). None of these terms is defined, nor does the statute address the issue of spousal care. Vermont case law is similarly silent on the subject of compensation to a spouse or other household or family member who provides these services.

A number of other states, however, have recognized spousal care as compensable when the services provided go beyond ordinary household duties. See *Edward Kraemer & Sons, Inc. v. Downey*, 852 P.2d 1286, 1288 (Colo. Ct. App. 1992) (spouse compensated for assistance in eating, bathing, turning, being in attendance in case of emergency); *Trejo v. Michigan Sugar Co.*, 350 N.W.2d 314, 316 (Mich. Ct. App. 1984) (compensable tasks performed by spouse included bathing, dressing, escorting); *Kidd v. Winchell's Donut House*, 465 N.W.2d 442, 448 (Neb. 1991) (spouse compensated for drawing insulin shots, checking sugar levels, cutting pills in half, driving and reading to spouse); 2 A. Larson, The Law of Workmen's Compensation § 61.13(d)(2), at 10-957 (1996) (compensation for nursing services provided by spouse permitted in majority of cases). Courts interpreting statutory language referring to "nursing services" have included care provided by a spouse that is similar to the services at issue here. See *Dresser Minerals v. Hunt*, 556 S.W.2d 138, 140 (Ark. 1977) (duties included giving intramuscular injections, enemas, hot baths, back

rubs and twenty-four-hour care); *Henson v. Workmen's Compensation Appeals Bd.*, 103 Cal. Rptr. 785, 787-88 (Ct. App. 1972) (duties included giving medications, emptying urinal, assisting in moving around house, setting out tray); *A.G. Crunkleton Elec. Co. v. Barkdoll*, 177 A.2d 252, 253, 256 (Md. 1962) (spouse provided assistance dressing, eating, eliminating, cleaning skin graft; duties did not require services of registered or practical nurse); Annotation, *Workers' Compensation: Recovery for Home Service Provided by Spouse*, 67 A.L.R.4th 765, 804-06 (1989).

The decisions in similar cases reflect a flexible approach, considering such factors as: the nature of the services provided, the need for continuous care, the employer's knowledge of the nature of the injury and the medical condition of the claimant, and whether a reasonable value may be assigned to the services provided. See *Henson*, 103 Cal. Rptr. at 790-92; *Edward Kraemer & Sons*, 852 P.2d at 1288-89; *Trejo*, 350 N.W.2d at 317.[1]

■ In this case, the Commissioner considered claimant's serious medical problems, his need for continuous care, and the type of care provided by claimant's spouse. Claimant's spouse, his physician, and a representative of the employer's insurer all testified to claimant's condition and need for twenty-four-hour care, based on his tendency to wander and his seizure activity. Claimant's physician described the tasks performed by claimant's spouse, noting that while some of them could be performed by a licensed practical nurse, others would require a registered nurse. While the physician agreed that many of the tasks performed by claimant's spouse in caring for her husband did not require skilled nursing care, he concluded that claimant required supervisory care all the time and skilled care some of the time, and noted that the times when skilled care would be required were unpredictable due to the nature of the head injury. The physician concluded that if only one person were to be in attendance, that person should be capable of providing skilled nursing care. The findings, and the ample evidence on which they are based, support the Commissioner's conclusion that claimant's spouse provided compen-

---

[1] In addition, courts recognize that a significant other, household or family member may provide services, as well as a spouse. See *McMahon v. Huntington*, 246 So. 2d 743, 744 (Fla. 1971) (sister); *Florida Medical Ctr. v. Renzi*, 464 So. 2d 231, 232 (Fla. Dist. Ct. App. 1985) (parents); *Interchange Village v. Clark*, 363 S.E.2d 350, 352 (Ga. Ct. App. 1987) (daughter); *Burd v. Industrial Comm'n*, 566 N.E.2d 35, 37, 41 (Ill. App. Ct. 1991) (fiancee); *Houston Gen. Ins. Co. v. Hamilton*, 634 S.W.2d 18, 21 (Tex. Ct. App. 1982) (mother and grandfather).

sable nursing services.

The employer agrees that some types of spousal services may be compensable, but argues that the Commissioner should have followed *Warren Trucking Co. v. Chandler*, 277 S.E.2d 488 (Va. 1981). In *Warren Trucking*, the Virginia Supreme Court held that nursing care provided at home by a spouse should be paid for by an employer if the spouse provides necessary medical attention. *Id.* at 493. The court developed a four-part test to determine whether services provided by a spouse should be compensated.

> (1) the employer knows of the employee's need for medical attention at home as a result of the industrial accident; (2) the medical attention is performed under the direction and control of a physician, that is, a physician must state home nursing care is necessary as the result of the accident and must describe with a reasonable degree of particularity the nature and extent of duties to be performed by the spouse; (3) the care rendered by the spouse must be of the type usually rendered only by trained attendants and beyond the scope of normal household duties; and (4) there is a means to determine with proper certainty the reasonable value of the services performed by the spouse.

*Id.*

The *Warren Trucking* court concluded that the claimant was not entitled to compensation because there was no evidence that the claimant's doctors or other medical professionals instructed the spouse on any medical procedures or necessary medical care; rather, the court described the services, including bathing, shaving, feeding, assistance in walking, and administering routine medication, as falling within the scope of "normal household duties." *Id.* at 494.[2] Three other jurisdictions have adopted the *Warren Trucking* test, with various modifications. See *Ross v. Northern States Power Co.*, 442 N.W.2d 296, 300 (Minn. 1989); *Larson v. Squire Shops, Inc.*, 742 P.2d 1003, 1005 (Mont. 1987); *St. Clair v. County of Grant*, 797 P.2d 993, 1002 (N.M. Ct. App. 1990).

In light of the deference we accord to the Commissioner's expertise, see *Burlington Elec. Dep't*, 154 Vt. at 337, 576 A.2d at 452, we decline to hold that the Commissioner must apply the specific test

---

[2]The applicable statute required the employer to provide "such other necessary medical attention . . . as the nature of the injury may require." *Warren Trucking*, 277 S.E.2d at 492 (quoting Va. Code Ann. § 65.1-88 (repealed 1991)).

outlined in *Warren Trucking*. Although *Warren Trucking* may provide guidance, we do not believe that its rigid framework is necessary to decide these cases. The Commissioner, aware of *Warren Trucking*, similarly chose to adopt a more flexible case-by-case approach. As the Commissioner is in the best position to make these decisions, we see no reason to require the application of another jurisdiction's test that the Commissioner considered and apparently rejected. Adopting such a test would also conflict with our longstanding practice of construing the workers' compensation statute liberally. See *St. Paul Fire & Marine Ins. Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991); *Packett v. Moretown Creamery Co.*, 91 Vt. 97, 101, 99 A. 638, 639 (1917).

██ Employer further argues that even if some of the services provided by claimant's spouse qualify as nursing services, she should be compensated only for the time she actually performed those services and not for the time she was "on call". A number of jurisdictions faced with similar cases have recognized that a caregiver is constantly "on call," even though part of the caregiver's time is spent performing other household chores. See *Edward Kraemer & Sons*, 852 P.2d at 1289 (spouse compensated for all hours in attendance including times doing other household work, because spouse was "passively" providing attendant care); accord *Standard Blasting & Coating v. Hayman*, 476 So. 2d 1385, 1387 (Fla. Dist. Ct. App. 1985), *review denied*, 488 So. 2d 68 (Fla. 1986); *Brown v. Eller Outdoor Advertising Co.*, 314 N.W.2d 685, 688 (Mich. Ct. App. 1981); *Larson*, 742 P.2d at 1008; *Texas Employers Ins. Ass'n v. Choate*, 644 S.W.2d 112, 116 (Tex. Ct. App. 1982). The decision to compensate for the entire time claimant's spouse was "on call" to provide nursing services to her husband was reasonable and well within the discretion of the Commissioner.[3]

---

[3] The employer argues that the Commissioner failed to state the law upon which she relied because she did not specify how she distinguished between compensable nursing services and other noncompensable services. See 21 V.S.A. § 664 (Commissioner shall make award setting forth findings of fact and law applicable thereto). As employer admits, however, the purpose of a requirement like that in § 664 is to give all parties and any appellate court a clear statement of what was decided and how the decision was reached. Cf. *Louis Anthony Corp. v. Department of Liquor Control*, 139 Vt. 570, 573, 432 A.2d 1186, 1188 (1981) (discussing 3 V.S.A. § 812). The Commissioner's ruling meets that standard.

## II.

██ Next, employer argues that if the services are compensable, compensation should be required only for the time period after February 1993, the date when claimant's spouse decided to accept assistance in caring for her husband. The Commissioner rejected this claim, emphasizing that employer knew of claimant's need for twenty-four-hour care from the time claimant was discharged from the hospital in 1989. In similar cases, courts have found constructive notice based on the severity of the injury, the prognosis, the medical status of the employee, and the employer's knowledge that the services were being provided. See *Henson*, 103 Cal. Rptr. at 792; *Larson*, 742 P.2d at 1008. Noting that the amount of compensation ordered was approximately $2,000 a year less than employer would have had to pay for placement at a residential facility, the Commissioner found the amount reasonable and fair. Moreover, the evidence and the findings suggest that claimant's spouse provided adequate and appropriate care. In short, employer can demonstrate no prejudice from the claimed lack of notice. As employer had knowledge of the extent of the injury and the amount awarded was no more and probably somewhat less than the employer would have been required to pay if claimant had been placed in full-time care during this period, the Commissioner's decision to award benefits from the date of claimant's discharge is fair and reasonable, and we will not disturb it.

We understand employer's desire to have prior notice of a claim for benefits, so that it can manage the claim in the most cost-effective way possible. After-the-fact claims must be subject to greater scrutiny, since the employer may have lost the ability to manage the claim. Our decision thus should not be read as a blank check, requiring payment of benefits even when an employer had no knowledge of the need for care and no opportunity to determine the type and cost of care provided.

## III.

██ Claimant argues that the Commissioner's decision to order compensation at the rate of $4.10 per hour was unreasonable and urges adoption of compensation at a rate of $18.00 per hour, based on the testimony of claimant's physician that many of the services provided by claimant's spouse were consistent with work done by registered nurses or physician assistants. The evidence, however, supports the Commissioner's use of the minimum wage. Although

some of the work was of a skilled nature, for much of the time claimant's spouse provided what another court has referred to as passive attendance. *Edward Kraemer & Sons*, 852 P.2d at 1289. Using the prevailing minimum wage resulted in a total amount of compensation close to what the employer would have paid for twenty-four-hour care at the residential facility where claimant now lives. Moreover, at oral argument, counsel for claimant conceded that the Commissioner's decision was fair under the circumstances. We therefore uphold the Commissioner's calculation of the compensation.

*Affirmed.*