SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| SABINO CARBAJAL, | ) Arizona Supreme Court |
| | ) No. CV-08-0359-PR |
| Petitioner, | ) |
| | ) Court of Appeals |
| v. | ) Division One |
| | ) No. 1 CA-IC 07-0054 |
| THE INDUSTRIAL COMMISSION OF | ) |
| ARIZONA, | ) ICA Claim |
| | ) No. 99326-000148 |
| Respondent, | ) |
| | ) Carrier Claim |
| PHELPS DODGE CORP., | ) No. 48846-57065 |
| | ) |
| Respondent Employer, | ) |
| | ) |
| GAB ROBINS NORTH AMERICA, | ) **O P I N I O N** |
| | ) |
| Respondent Carrier. | ) |
| _____ | ) |

Appeal from the Industrial Commission of Arizona
The Honorable Anthony F. Halas, Administrative Law Judge

**AWARD SET ASIDE**
_____

Opinion of the Court of Appeals, Division One
218 Ariz. 578, 190 P.3d 737 (App. 2008)

**VACATED**
_____

LAW OFFICE OF AIDA J. RICO                                      Phoenix
     By   Aida J. Rico

And

LAW OFFICES OF CHARLES M. BREWER, LTD.                          Phoenix
     By   David L. Abney
Attorneys for Sabino Carbajal

JARDINE, BAKER, HICKMAN & HOUSTON, P.L.L.C.                     Phoenix
     By   Scott H. Houston
Attorneys for Phelps Dodge Corp. and GAB Robins North America

BRIAN CLYMER ATTORNEY AT LAW                          Tucson
     By   Brian I. Clymer
Attorneys for Amicus Curiae Southern Arizona Workers
Compensation Claimants' Attorneys' Association
_____

**B E R C H**, Vice Chief Justice

¶1      An Arizona workers' compensation statute requires payment for "medical, surgical and hospital benefits or other treatment, [or] nursing . . . reasonably required . . . during the period of disability."  Ariz. Rev. Stat. ("A.R.S.") § 23-1062(A) (1995).  We have been asked to determine whether certain services provided by an injured worker's spouse are compensable under this statute.  We hold that the compensability of these services depends on the nature of the care provided and not the status or identity of the service provider.  We therefore vacate the opinion below and set aside the Industrial Commission award.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

¶2      In November 1999, Sabino Carbajal suffered an industrial injury, which caused cognitive problems and partial paralysis on his right side.  As a result, he requires full-time supervision and intermittent attendant assistance.

¶3      Mr. Carbajal, who now resides in a full-time care facility, initially lived at home following the accident. During that time, his employer, Phelps Dodge, and its workers' compensation carrier (collectively the "Carrier") provided attendant care for Mr. Carbajal.  Each day, an attendant arrived

- 2 -

at 6:00 a.m. or 7:00 a.m., helped Mr. Carbajal from bed, bathed and dressed him, and helped him perform simple exercises. On weekdays, the attendant transported Mr. Carbajal to an adult day care rehabilitation center and returned him home at about 3:30 p.m. On Saturdays, after performing the morning routine, the attendant left Mr. Carbajal with his wife at 9:30 a.m., and on Sundays took him to church and returned him at 1:00 p.m. Each night between 6:30 p.m. and 9:30 p.m., the attendant assisted Mr. Carbajal with range of motion exercises and prepared him for bed. The Carrier also provided a nurse who visited weekly and was on call for significant health issues.

¶4 At all other times, Mr. Carbajal was under his wife's care. In addition to supervising her husband during these hours, Mrs. Carbajal gave him his medication in the morning; specially prepared his food; cleaned him when he was returned from day care soiled; and moved him between his wheelchair and his bed, the toilet, or his recliner. When the scheduled attendants did not arrive, Mrs. Carbajal performed their assigned tasks. Several times each night Mrs. Carbajal checked the oxygen levels on Mr. Carbajal's sleep apnea mask and sometimes helped him to the bathroom or cleaned him if he soiled himself. The Carrier paid for Mrs. Carbajal to receive training on monitoring Mr. Carbajal's oxygen levels and transferring him from his bed to his wheelchair. When Mrs. Carbajal took out-of-

town trips, Mr. Carbajal was placed in a 24-hour care facility.

¶5     Mr. Carbajal, through his legal guardian, requested payment for attendant care services provided by Mrs. Carbajal, which the Carrier denied.  Following an Industrial Commission hearing, the Administrative Law Judge ("ALJ") denied compensation, concluding that Mrs. Carbajal's services were "akin to the day-to-day duties assumed by a spouse in accord with the marriage commitment."  The ALJ reasoned that whether "a paid attendant would otherwise be required" was immaterial to whether the statute requires compensation.  Mr. Carbajal filed a statutory special action.  *See* A.R.S. § 23-951(A) (1995); Ariz. R.P. Spec. Act. 10.

¶6     A divided panel of the court of appeals affirmed. *Carbajal v. Indus. Comm'n*, 218 Ariz. 578, 584, ¶ 24, 190 P.3d 737, 743 (App. 2008).  The court interpreted the statutory phrase "other treatment" to include only skilled attendant care services that fall within the class of "medical, surgical and hospital benefits."  *Id.* at 583-84, ¶¶ 22-23, 190 P.3d at 742-43.  Judge Kessler dissented, concluding that the majority incorrectly narrowed the covered services and placed a burden on the claimant that should have been borne by the employer.  *Id.* at 587, 592, ¶¶ 40, 55, 190 P.3d at 746, 751 (Kessler, J., dissenting).

¶7     We granted Mr. Carbajal's petition for review because

this case presents an issue of first impression and statewide importance. *See* ARCAP 23(c). We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24 (2003).

## II.  DISCUSSION

**¶8**       Arizona Revised Statutes Section 23-1062(A) requires compensation for "medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of disability." Two statutory requirements are at issue here:  To be compensable, the services must fall within one of the categories listed in the statute, and the services must be "reasonably required."

## A.  The Court of Appeals Opinion

**¶9**       In addressing the first requirement, the court of appeals focused on the term "other treatment" and applied the doctrine of *ejusdem generis*[1] to determine its meaning. *Carbajal*, 218 Ariz. at 581-82, ¶¶ 13, 17, 190 P.3d at 740-41. Analyzing the phrase "medical, surgical and hospital benefits or other

---

[1]    Under the *ejusdem generis* doctrine, "general words which follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class." *State v. Barnett*, 142 Ariz. 592, 596, 691 P.2d 683, 687 (1984).

treatment," the court determined that "other treatment" is limited to "other [medical] treatment." *Id.* at 582, ¶ 17, 190 P.3d at 741 (alteration in original). The majority thus concluded that the statute covers only those services that are "typically performed only by trained attendants." *Id.* at 582-83, ¶ 20, 190 P.3d at 741-42.

¶10 When construing workers' compensation statutes, we favor interpretations that make the claimant whole. *See Nicholson v. Indus. Comm'n*, 76 Ariz. 105, 108, 259 P.2d 547, 549 (1953). The court of appeals' interpretation of the statute not only denies the claimant redress, but effectively renders the phrase "other treatment" superfluous. *See Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10, 181 P.3d 188, 190 (2008) (advising against interpretations that render statutory words or phrases "meaningless, unnecessary, or duplicative"). Under the standard set by the court of appeals, services that qualify as "other treatment" would also appear to qualify as "medical, surgical and hospital benefits" or "nursing." To avoid such duplication, the listed categories in § 23-1062(A) should be construed as encompassing expenses not generally covered by the others.

¶11 The court of appeals majority relied on *Hughes v. Industrial Commission*, 188 Ariz. 150, 933 P.2d 1218 (App. 1996), as support for a narrow construction of the term "other

treatment." In *Hughes*, the claimant sought compensation for child care services incurred because, as a result of an industrial injury, she could not care for her child. *Id.* at 151, 933 P.2d at 1219. The court rejected Hughes's claim, concluding that "other treatment" means other medical treatment. *Id.* at 154, 933 P.2d at 1222. *Hughes*, however, addressed a claim far removed from the types of services covered by the listed categories. Rather than seeking payment for services to cure or ameliorate the health effects of her injury, Hughes sought compensation for services she formerly provided to another. The court noted this distinction in *Hughes*, *id.* at 154, 933 P.2d at 1222, and we read nothing more into its use of the phrase other "medical treatment."

¶12 To help it distinguish compensable attendant services from non-compensable housekeeping duties, the court of appeals analyzed two opinions from other jurisdictions, *Warren Trucking Co. v. Chandler*, 277 S.E.2d 488 (Va. 1981), and *Close v. Superior Excavating Co.*, 693 A.2d 729 (Vt. 1997). *See Carbajal*, 218 Ariz. at 581-82, ¶¶ 15-16, 190 P.3d at 740-41.

¶13 *Warren Trucking* involved a disabled claimant's request for compensation for services performed by his spouse in attending to his needs. 277 S.E.2d at 492. The claimant's wife helped him bathe, shave, and put on braces, and she prepared his meals, drove the car, and maintained the household. *Id.* at 491.

When the claimant lost consciousness, his wife revived him. *Id.* Virginia's statute provided benefits for "a physician . . . and *such other necessary medical attention . . . as the nature of the injury may require.*" *Id.* at 492 (quoting Va. Code Ann. § 65.1-88). The Virginia court concluded that under this statute, to qualify as compensable "medical attention" the spouse's care must, among other requirements, be "performed under the direction and control of a physician" and be "the type [of care] usually rendered only by trained attendants and beyond the scope of normal household duties." *Id.* at 493. The court rejected the claim because the care rendered by the wife was not prescribed by a doctor and was not "of the type usually rendered only by trained attendants." *Id.* at 494.

¶14    In *Close*, the claimant received a severe head injury and required 24-hour supervision. 693 A.2d at 730. The claimant's wife cared for him at home, including "administer[ing] and monitor[ing] his medications[,] . . . alter[ing] the doses [of medication,] . . . log[ging] . . . her husband's behavior[, and] monitoring her husband's seizure activity and responding appropriately." *Id.* The Vermont statute provided benefits for "reasonable surgical, medical and nursing services." *Id.* at 731 (quoting Vt. Stat. Ann. tit. 21, § 640(a)). In concluding that the wife's services were compensable, the court rejected the "rigid framework" of *Warren*

- 8 -

*Trucking*, in part because it "would . . . conflict with [its] longstanding practice of construing the workers' compensation statute liberally." *Id.* at 732.

¶15 The court of appeals here found *Warren Trucking* more persuasive than *Close*. *Carbajal*, 218 Ariz. at 583, ¶ 20, 190 P.3d at 742. We conclude, however, as the Vermont Supreme Court did, that *Warren Trucking*'s rigid framework does not further the remedial purposes of workers' compensation statutes. *See* 693 A.2d at 732; *see also Nicholson*, 76 Ariz. at 108, 259 P.2d at 549 (noting that we construe workers' compensation statutes liberally "with a view of effectuating their evident purpose of placing the burden of injury and death upon industry" (quoting *Ocean Accident & Guar. Corp. v. Indus. Comm'n*, 32 Ariz. 265, 272, 257 P. 641, 643 (1927))). We find *Close* more helpful because the Vermont statute, like the Arizona statute, broadly covers reasonable surgical, medical, and nursing services. *Compare* A.R.S. § 23-1062(A), *with* Vt. Stat. Ann. tit. 21, § 640(a). In contrast, the Virginia statute at issue in *Warren Trucking*, which mandated payment only for "a physician . . . and such other necessary medical attention," substantially differs from § 23-1062(A). *Warren Trucking*, 277 S.E.2d at 492. *Warren Trucking* therefore does not assist in interpreting Arizona's statute. Under Arizona law, compensability turns on the nature of the services, not on the identity of the provider.

## B.   Nature of Services Provided

¶16     Mr. Carbajal received several hours of attendant care each week, for which the Carrier paid.  Some services rendered by the attendants, such as dressing and driving Mr. Carbajal, are not medical or curative treatment, but rather constitute palliative care.[2]

¶17     The Carrier acknowledges that A.R.S. § 23-1062(A) implicitly covers such palliative care.  We agree; by extending compensation for services rendered after a claimant becomes medically stationary, the legislature intended to include coverage for reasonably required palliative care.  *See* 1973 Ariz. Sess. Laws, ch. 133, §§ 30, 32 (1st Reg. Sess.) (extending medical, surgical, and hospital benefits to periods of permanent

---

[2]     Palliative care involves managing the claimant's symptoms or mitigating the effects of the claimant's injury.  *See* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 94.04 (2008); *see also Jackson v. Columbia Pictures*, 610 So. 2d 1349, 1351 (Fla. Dist. Ct. App. 1992); *O'Donnell v. Workers' Comp. Appeal Bd.*, 831 A.2d 784, 791 (Pa. Commw. Ct. 2003).  Palliative care differs from curative treatment, which is designed to reduce the level of injury or end the disability. *See* 5 Larson & Larson, *supra*, § 94.04.  Once a claimant is "medically stationary," medical care cannot cure or improve the claimant's medical condition.  *See Hardware Mut. Cas. Co. v. Indus. Comm'n*, 17 Ariz. App. 7, 9-10, 494 P.2d 1353, 1355-56 (1972).  Becoming medically stationary demarcates the transition from the period of "temporary disability" to the period of "permanent disability."  *Id.*  Once the claimant is medically stationary, treatment is necessarily palliative rather than curative because, by definition, it cannot improve the claimant's condition. *See id.*

disability).

¶18     Certain services Mrs. Carbajal provided were identical to those rendered by paid attendants. For example, when attendants failed to show up, Mrs. Carbajal performed the services they would have provided, such as bathing and dressing Mr. Carbajal. The Carrier maintains that although Mrs. Carbajal performed some of the services provided by paid attendants, § 23-1062(A) does not require compensation for Mrs. Carbajal's performance of these duties because she is not a licensed health care provider. We fail to see the connection between licensure and compensation. There is no suggestion that Mrs. Carbajal lacks a required license or is otherwise unqualified to perform the services in question. Nothing in the statute hinges compensability of services to the fact of licensure, even though some services compensable under § 23-1062(A) may only legally be performed by licensed providers.[3] Thus licensure of the service provider is not the touchstone for determining the compensability of services.

¶19     The Carrier's claim that services are compensable when performed by Carrier-provided attendants, but not when performed by Mrs. Carbajal, therefore must turn on her status as Mr.

---

[3]     *See, e.g.*, A.R.S. § 32–1455(A)(1) (2008) (making the unlicensed practice of medicine a felony).

- 11 -

Carbajal's spouse. Yet the statute creates no such distinction. The statute speaks only in terms of goods and services. The compensability of services inquiry should focus on the nature of the services provided, not on the identity of the service provider. If an injured worker requires services compensable under § 23-1062(A), then the employer must provide them. If the employer fails to do so and thus puts that burden on the injured employee's spouse, compensation for the necessary services is required by the statute. Those services provided by Mrs. Carbajal that would constitute compensable palliative care if performed by the Carrier-paid attendants are thus compensable.

## C. Reasonably Required Care

¶20 Even if services fall within a compensable category, § 23-1062(A) does not require compensation for them unless they are "reasonably required." The ALJ did not decide whether the care provided by Mrs. Carbajal was reasonably required because he found that her services were "not of the type which necessitates a trained attendant." He opined that the fact that "a paid attendant would otherwise be required in Mrs. Carbajal's absence" did not bring her services within the scope of § 23-1062(A) or require the employer to pay for her services.

¶21 The Carrier contends that Mrs. Carbajal's services were not required because Mr. Carbajal could have performed many of the tasks himself. It maintains that she provided these

- 12 -

services only because he demanded that she do so.  Whether the services were reasonably required is a question of fact that we leave for the ALJ to address in the first instance. *Regnier v. Indus. Comm'n*, 146 Ariz. 535, 538, 707 P.2d 333, 336 (App. 1985) (citing *Lowman v. Indus. Comm'n*, 54 Ariz. 413, 419, 96 P.2d 405, 407 (1939)).

### III.  CONCLUSION

¶22      For the foregoing reasons, we vacate the opinion of the court of appeals and set aside the Industrial Commission award.  We remand the case to the Industrial Commission for further proceedings consistent with this opinion.


_____
                 Rebecca White Berch, Vice Chief Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice


- 13 -