IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

GAIL L. PALMER, et al., *Plaintiffs/Appellants*,

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees*.

No. 1 CA-CV 16-0398
FILED 3-30-17

Appeal from the Superior Court in Maricopa County
No. LC2015-000477-001
The Honorable Dawn M. Bergin, Judge

**AFFIRMED**

COUNSEL

Timothy A. LaSota PLC, Phoenix
By Timothy A. LaSota
*Counsel for Plaintiffs/Appellants*

Schern Richardson Finter Decker PLC, Mesa
By Michael A. Schern, Adam B. Decker
*Counsel for Defendant/Appellee Grand Canyon University*

Phoenix City Attorney's Office, Phoenix
By Paul M. Li
*Counsel for Defendant/Appellee City of Phoenix*

---

**OPINION**

Judge Patricia K. Norris delivered the opinion of the Court, in which Presiding Judge Kenton D. Jones and Judge Paul J. McMurdie joined.

---

**N O R R I S**, Judge:

¶1          In 2015, Grand Canyon University ("GCU") asked the City of Phoenix to abandon a roadway near its campus that had been dedicated to the City for the public's use in 1926 (the "1926 Dedication"). Over the objections of Plaintiffs/Appellants Gail L. Palmer, Janice M. Palmer, and Gary S. Perkins-Warinner (the "Landowners"), the City decided to conditionally abandon the roadway. On appeal, the Landowners argue the City's decision to conditionally abandon the roadway was contrary to the terms of the 1926 Dedication, state law, and the City Code, and, therefore, illegal. The Landowners also argue the abandonment method the City adopted—a public sale—violated state law and the City Code because the City "engineered" the sale to ensure that GCU would be the only bidder. We reject the Landowners' arguments and affirm the superior court's judgment in favor of the City and GCU.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          In 2015, GCU submitted an "abandonment application" to the City's Planning and Development Department ("Department") and requested the City abandon part of West Colter Street, an east-west street, and part of a street that intersected West Colter Street, North 30th Drive, a north-south street (collectively, the "roadway"). GCU owned all the property abutting the roadway except for three parcels of property abutting West Colter Street, one owned by a third party not involved in this litigation,[1] and two neighboring parcels owned and used as rental properties by the Landowners (collectively, the "private property owners"). GCU proposed building two guard gates or booths, one on the eastern end of West Colter Street and one at the north end of North 30th Drive which would allow GCU to control access to all of the property abutting the roadway, whether owned by it or the private property owners.

---

[1]The third party did not oppose abandonment of the roadway.

¶3        The City received the roadway for the public's use through a recorded dedication in 1926 when the "Homeland" subdivision was platted. The 1926 Dedication recited the owners had:

> caused the . . . property to be surveyed, subdivided and platted as shown hereon, which said premises so subdivided and platted shall hereafter be known as HOMELAND, *and that the plat as shown* hereon sets for the location, gives the number and dimensions of each lot and block and *gives the name and width of roads, which said roads so shown are hereby dedicated to the use of the public.*

(Emphasis added).

¶4        In July 2015, the City's Abandonment Hearing Officer conducted a public hearing on GCU's abandonment application. At the hearing, an attorney representing GCU explained GCU representatives had met with the Landowners and others to discuss the requested abandonment and GCU had agreed to several "stipulations" designed to address various access concerns they had raised. Accordingly, GCU's attorney informed the Hearing Officer, that, in addition to building the guard gates, GCU would: (1) build an "express/thru" lane so the private property owners and their renters, guests, invitees, and service providers (collectively, "related users") could bypass the guard gates; (2) maintain at its expense the roadway's pavement and sidewalks "commensurate with" public roadways in the City; (3) grant a permanent, unrestricted, recorded access easement to the private properties' owners for their benefit and the benefit of their related users; and (4) not restrict pedestrians from accessing or leaving Little Canyon Trail, a City maintained trail, at West Colter Street or North 30th Drive. Although GCU's original abandonment application had not expressly asked the City to convey title or fee ownership of the roadway to GCU, given GCU's willingness to agree to the stipulations, GCU clearly anticipated that, if the City approved the proposed abandonment, the City would convey the roadway to it.

¶5        The Landowners objected to the proposed abandonment at the hearing, criticizing, among other matters, GCU's presence in the area, GCU's treatment of them, GCU's students, and GCU's failure to obtain an environmental impact statement. Despite the Landowners' opposition, the Hearing Officer conditionally approved GCU's abandonment application, subject to GCU's compliance with and performance of the stipulations

within 18 months. The Landowners and a third party appealed the Hearing Officer's decision to the Phoenix City Council.

¶6            City officials and Department staff then met with the appealing parties and representatives of GCU and discussed the proposed abandonment and the appealing parties' objections. Based on the discussions, the Department's Director submitted a memorandum to the City Council recommending approval of the proposed abandonment with modified and additional stipulations. The modified and additional stipulations concerned, in part, access issues and, in part, reflected that if the City abandoned the roadway, it would do so through a public sale which, under state law and the City Code, would allow anyone, not just GCU, to buy the roadway, subject to any stipulations imposed by the City. Accordingly, the Director explained the stipulations had been modified to "correctly portray that any purchaser of the abandonment area must comply with all or their portion of the stipulations prior to taking control of" the roadway.

¶7            Thus, by way of example, the modified stipulations required "[a]ny purchaser . . . [to] provide the private property owners along Colter Street . . . with a permanent, unrestricted, recorded access easement to their properties for the benefit of the owners and their invitees, guests and any service personnel to use the [express/thru] lane at all times." Similarly, the modified stipulations required "any purchaser . . . [to] maintain the [roadway's] existing pavement and sidewalk improvements in a condition commensurate with public roadways in the City of Phoenix, for so long as there remains any private properties (not owned by GCU) within [] the abandonment boundaries." And, the modified stipulations prohibited "[a]ny purchaser of any portion of the [roadway from restricting] movement of pedestrians utilizing Little Canyon Trail from accessing the trail at Colter Street or 30th Drive during hours of operation."

¶8            Subject to the modified and additional stipulations in the Director's memorandum ("the final stipulations"), in October 2015 the City Council unanimously, but conditionally, approved the proposed abandonment. The City Council's approval was conditional because, as the Director explained in his memorandum,

> The City will ensure compliance with all stipulations and City Council will have final review and approval prior to any actual [conveyance of the roadway] to any private entity. This requested action only lays out a course for the purchasing entity to comply with

prior to the City Council authorizing a
conveyance of the [roadway] through a separate
City Council action.

**¶9**      The Landowners then filed a verified complaint in the
superior court seeking special action relief. As relevant here, in their
complaint and in subsequent filings in the superior court, the Landowners
argued the City's conditional abandonment (1) violated the 1926 Dedication
and state law in effect when the roadway was dedicated to the City because
both required the City to maintain the roadway for the public's use; (2)
violated state law and the City Code because the roadway was still
necessary for the public's use; and (3) violated state law and the City Code
because the abandonment method approved by the City—a public sale—
had been "engineered" by the City to ensure GCU would be the only bidder
at the sale.

**¶10**      After full briefing and extensive oral argument, the superior
court dismissed the Landowners' complaint. The court ruled the City had
not proceeded or threatened to proceed "without or in excess of jurisdiction
or legal authority" and the City's decision to conditionally approve the
abandonment had not been arbitrary and capricious or an abuse of
discretion. *See* Ariz. R.P. Spec. Act. 3(b)-(c) (special action addresses
whether a "defendant has proceeded or is threating to proceed in excess of
jurisdiction or legal authority" or "[w]hether a determination was arbitrary
and capricious or an abuse of discretion").

## DISCUSSION[2]

I.      The 1926 Dedication and the City's Authority to Abandon a
Roadway Dedicated to Public Use.

**¶11**      The Landowners argue, as they did in the superior court, that
the City was not entitled to conditionally abandon the roadway because it
had been dedicated in 1926 "to the use of the public."[3]  The 1926 Dedication

---

[2]Because the dispositive issues in this appeal present issues of
law, our review is de novo. *Nat'l Collegiate Student Loan Trust 2007-2 v. Rand*,
241 Ariz. 169, 171, ¶ 7, 384 P.3d 1249, 1251 (App. 2016) (citation omitted).

[3]The Landowners argued in the superior court that the City
did not own fee title to the roadway but instead held only an easement for
use of the roadway because the 1926 Dedication had been a common law
and not a statutory dedication. *See generally Pleak v. Entrada Prop. Owners*

did not, as the Landowners argue, prohibit the City from abandoning the roadway.

¶12        When the owners dedicated the roadway to the public's use in 1926, the statute that governed the 1926 Dedication required a landowner who wished to subdivide property into tracts of 20 acres or less to have the property surveyed and platted and "by proper dedication, dedicate the avenues, streets, parks, plazas, public grounds and alleys to the public for their general use." 1913 Arizona Civil Code § 5313. Section 1895 of the 1913 Civil Code provided that upon the "filing" of a map or plat, the "fee of all streets . . . and other parcels of ground reserved therein to the use of the public, shall vest in such town, if incorporated, in trust, for the uses therein named and expressed." Accordingly, under these statutes, the City became the fee owner of the roadway and, consistent with the language of the 1926 Dedication, received the roadway in trust for the public's use.[4]

¶13        But the City's receipt of the roadway in trust for the public's use did not mean it could not abandon it. Section 1897 of the 1913 Civil Code also authorized a city to "vacate," that is, abandon, city streets and other public property ("[C]ities and common councils in cities shall have the [power to] lay out and establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds, and vacate the same."). Thus, the statutes in effect in 1926 granted

---

*Ass'n*, 207 Ariz. 418, 421, ¶ 8, 87 P.3d 831, 834 (2004) (under common law, landowner may dedicate land for a proper public use; effect of common law dedication is that the public acquires an easement to use the property for the specified purpose while the fee remains with the dedicator); *Allied Am. Inv. Co. v. Pettit*, 65 Ariz. 283, 289-90, 179 P. 437, 440-41 (1947) (when, pursuant to statute, landowner records plat showing streets, alleys, parks, and other property reserved for the public's use, fee vests in town, if incorporated). Based on this distinction, the Landowners argued the City could not abandon the roadway because the City did not own it. The superior court ruled the 1926 Dedication was a statutory dedication, and the Landowners have not challenged that ruling on appeal.

        [4]The parties have agreed that the 1913 Civil Code governs the legal effect of the 1926 Dedication. The parties have been less than clear, however, whether the 1913 Civil Code or the statutes in effect when the City approved the conditional abandonment control the validity of the conditional abandonment. We do not need to decide which statutory scheme controls as the dedication and abandonment statutes have remained the same since 1913. *See infra* ¶ 14.

a city the right to receive property in fee for the public's use *and* the right to vacate—or abandon—city-owned public property.

¶14        From the enactment of the 1913 Civil Code to the present, the Legislature has continued to grant cities the right to receive property in fee for the public's use and the right to vacate city-owned public property. What is now Arizona Revised Statutes ("A.R.S.") section 9-1141 (2008) and (1956), which authorizes a landowner to dedicate property for public use, existed as § 17-1818 in the 1939 Arizona Civil Code, § 3210 in the 1928 Arizona Civil Code, and, as discussed, § 5313 in the 1913 Civil Code. What is now A.R.S. § 9-254 (2008) and (1956), which vests the fee of platted property in trust for the public's use, existed as § 16-231 in the 1939 Civil Code, § 395 in the 1928 Civil Code, and, as discussed, § 1895 in the 1913 Civil Code. And, what is now A.R.S. § 9-276(A)(1) (2008) and (1956), which empowers cities to vacate, or abandon, city-owned streets, alleys, avenues, and sidewalks, existed as § 16-601 in the 1939 Civil Code, § 408 in the 1928 Civil Code, and, as discussed, § 1897 in the 1913 Civil Code.

¶15        Consistent with the broad authority it granted to cities to abandon city-owned property, in 1961 the Legislature expressly authorized a municipal corporation to vacate a roadway if it determined the roadway was no longer necessary for public use.[5] *See* 1961 Ariz. Sess. Laws, ch. 105, § 105 (originally codified at A.R.S. § 18-502 (1961)). Now codified at A.R.S. § 28-7202 (2013), this statute states that if "a governing body determines that a public roadway owned by the city . . . or a portion of the roadway is not necessary for public use as a roadway, the governing body may dispose of . . . the roadway . . . ." The City Code contains virtually the same provision: "When in the discretion of the City Council a public roadway owned by the City, or a portion of such a roadway, is no longer necessary for public use as roadway, the City Council may dispose of . . . the same . . . ." Phoenix City Code § 31-64.

¶16        Thus, in 1926, when the owners dedicated the roadway to the City in trust for the public's use, they did so subject to the City's right to vacate city-owned property. *See generally Martini v. Smith,* 42 P.3d 629, 633 (Colo. 2002) (dedication of street for public use was binding on municipality under statutes in effect at the time of the dedication but street could be vacated by municipality if municipality complied with statutory requirements in effect when municipality decided to vacate the street); *City*

_____

[5]A roadway "includes all or part of a platted designated public street, highway, alley, lane, parkway, avenue, road, sidewalk or other public way . . . ." A.R.S. § 28-7201(4) (2013).

*of Detroit v. Judge of Recorder's Court of City of Detroit*, 234 N.W. 445, 447 (Mich. 1931) (city acquired land by dedication; subject, at the time of the dedication, to city's right under its charter to alter, vacate, or abolish its public places); *Belgum v. City of Kimball,* 81 N.W.2d 205, 218 (Neb. 1957) (when street is dedicated to public's use in a recorded plat, as authorized by statute, dedication is also subject to statute that allows a city to vacate streets and alleys); *In re Appeal from Passage of Ordinance 4354 of the City of Altoona*, 388 A.2d 313, 317 (Pa. 1978) (dedication does not impose upon a municipality a duty to maintain dedicated roadway in perpetuity; when purpose for which the roadway was dedicated no longer exists or the public is no longer benefited by the designated use, municipality is empowered to vacate the roadway); *see also* 26 C.J.S. *Dedication* § 88 ("The power of a municipality . . . to vacate property *dedicated to public use is dependent on the statute* and, where a city is given such a power, dedications to it are subject to this power since the acceptance of the dedication does not constitute a waiver of its right.") (emphasis added) (footnotes and citations omitted).

¶17 At its heart, the Landowners' argument—that the 1926 Dedication and the City's receipt of the roadway in trust pursuant to § 1895 of the 1913 Civil Code prevented the City from conditionally abandoning the roadway—is premised on the notion that a city may never abandon property dedicated to the public's use, even if the city has determined the property is no longer needed for the public's use. Under their argument, a city would be required to hold in perpetuity dedicated property even if the character of the neighborhood or surrounding property changed. The Arizona Supreme Court, however, all but rejected that argument in *Reese v. De Mund* ("*Reese I*"), 74 Ariz. 140, 245 P.2d 284 (1952).

¶18 There, a plat recorded in 1880 dedicated to the public all streets and alleys that abutted blocks of subdivided property. *Id.* at 141, 245 P.2d at 285. Approximately 70 years after the City of Phoenix accepted the dedication, the City decided to abandon and convey one of the alleys to a private party. *Id.* The plaintiff sued the private party and the City, asserting the conveyance of the alley to the private party was void because the abandonment "was not done for the public good." *Id.* After noting that the City had acted in a legislative capacity in deciding to abandon the alley, the court concluded the City's charter—which authorized the City to both accept and vacate street dedications—allowed the City to vacate the alley and thus: "[T]he action of the council was within its declared powers." *Id.* at 143, 245 P.2d at 286.

¶19 As in *Reese I*, the City's decision to conditionally abandon the roadway was within its declared powers, both under the 1913 Civil Code, current statutes, and, indeed, under the City's current charter and City

Code. *See* Charter of the City of Phoenix, Ch. IV, section 49 (2016) (City may "accept dedications of streets" and "vacate such dedications"); Phoenix City Code § 31-64 (City may vacate a roadway if that roadway is no longer necessary for public use).

¶20 The Landowners rely on several out-of-state cases in arguing the City was barred from conditionally abandoning the roadway because the roadway had been dedicated to the public's use. The cases cited by the Landowners recognize that, in general, a governmental entity holds dedicated property in trust for the public to be used for the purposes specified in the dedication.[6] Arizona courts have also acknowledged that general rule. *Allied Am. Inv. Co. v. Pettit*, 65 Ariz. 283, 290, 179 P.2d 437, 441 (1947); *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 379, 697 P.2d 1125, 1129 (App. 1984). But none of these authorities addressed whether a governmental entity may, pursuant to statutory authorization, abandon that property if it determines the property is no longer needed for the public's use.

¶21 Finally, if we were to accept the Landowners' argument, A.R.S. § 28-7202, *see supra* ¶ 15, would become meaningless as a municipal corporation would never be able to abandon a roadway that had originally been dedicated to public use. *See Carbajal v. Indus. Comm'n*, 223 Ariz. 1, 3, ¶ 10, 219 P.3d 211, 213 (2009) (citing *Ariz. Dep't of Revenue v. Action Marine, Inc.*, 218 Ariz. 141, 143, ¶ 10, 181 P.3d 188, 190 (2008)) (appellate courts should not interpret statutes such that statutory words or phrases are meaningless, unnecessary, or duplicative) (quotation omitted).

¶22 In short, under Arizona law, the City was not precluded from conditionally abandoning the roadway even though, pursuant to the 1926 Dedication, the City received the roadway in trust for the public's use. The owners made the 1926 Dedication subject to the City's right to abandon city-owned property—a right, we underscore, that exists to this day.

II. The Landowners May Not Challenge the City's Legislative Decision to Abandon the Roadway without Special Damages.

¶23 The Landowners argue the City was not entitled to conditionally abandon the roadway under A.R.S. § 28-7202 and the City

---

[6]*City Council of Augusta v. Newsome*, 89 S.E.2d 485 (Ga. 1955); *Schien v. City of Virden*, 126 N.E.2d 201 (Ill. 1955); *2000 Baum Family Trust v. Babel*, 793 N.W.2d 633, 637-40 (Mich. 2010); *Ruggieri v. City of E. Providence*, 593 A.2d 55 (R.I. 1991); *Roeder Co. v. Burlington N., Inc.*, 714 P.2d 1170 (Wash. 1986).

Code because the roadway is still necessary for public use. In making this argument, the Landowners point to several of the final stipulations that, for example, require the purchaser of the roadway to grant the private property owners along West Colter Street an access easement and prohibit the purchaser from taking steps that would limit the public's access to Little Canyon Trail. *See supra* ¶ 7. As a matter of law, however, the Landowners are not entitled to challenge the City's legislative decision to conditionally abandon the roadway because they did not allege or otherwise present any evidence that the conditional abandonment had caused or would cause them special damages.

¶24        In *Reese I* and in *Reese v. De Mund* ("*Reese II*"), 75 Ariz. 66, 251 P.2d 887 (1952), the Arizona Supreme Court addressed whether a property owner could challenge a municipal corporation's legislative decision to abandon dedicated property. As discussed, there, the City decided to vacate and abandon property it had received through a dedication. *See supra* ¶ 18. Recognizing that in deciding to vacate and abandon the property the City had acted in a legislative capacity, *Reese I*, 74 Ariz. at 142-43, 245 P.2d at 285-86, the court explained it could not "question the wisdom or discretion or advisability of [the City's] action except for fraud or other illegality or absence of jurisdiction to abandon" unless the property owner could show special damages from the abandonment. The court stated: "[I]n the absence of absolute illegality a property owner may not complain of the act of a municipality in abandoning a street unless he shows some special damage resulting to him from such action." *Id.* at 143, 245 P.2d at 286; *see also Reese II*, 75 Ariz. at 67, 251 P.2d at 887 (affirming superior court's dismissal; damages alleged were "not different in either degree or kind from those suffered by the public, generally, and can constitute no basis for the cause of action claimed").

¶25        Here, the record before us contains no evidence the Landowners have suffered or will suffer any special damages.

¶26        The Landowners argue, nevertheless, that GCU waived the special damages requirement because it did not raise the requirement in a timely manner in the superior court. GCU did not, however, waive the issue. "[A] party must timely present his legal theories to the trial court so as to give the trial court an opportunity to rule properly." *Payne v. Payne*, 12 Ariz. App. 434, 435, 471 P.2d 319, 320 (App. 1970) (citations omitted). Counsel for GCU timely raised the special damages requirement in the superior court during oral argument, and the court and the parties extensively discussed the requirement and *Reese I* during the argument. Further, during the argument, counsel for the Landowners acknowledged that the "record below" — a reference to the administrative record presented

to the superior court—did not contain any testimony from the Landowners that the conditional abandonment would have an adverse impact on their "properties as rentals."[7]

**¶27** Under these circumstances, the Landowners were not in a position to "question the wisdom or discretion or advisability" of the City's decision to conditionally abandon the roadway. *Reese I*, 74 Ariz. at 142, 245 P.2d at 285.

**¶28** Finally, to the extent the Landowners are arguing the conditional abandonment is illegal because the roadway is still necessary for the public's use, *see supra* ¶ 23, this argument is, at its core, nothing more than a challenge to the City's legislative decision making. *Reese I* recognized that a municipal corporation acts in its legislative capacity when it decides to abandon a roadway, and a property owner who fails to present evidence of special damages cannot challenge that action except for fraud, other illegality, or the absence of jurisdiction to abandon. 74 Ariz. at 142, 245 P.2d at 285. Here, the Landowners made no showing they fell within any of these exceptions to the special damages requirement.

III.    The Validity of the Conditional Abandonment Under A.R.S. § 28-7204 and Phoenix City Code Provision § 31-64.

**¶29** The Landowners argue the conditional abandonment violates state law, A.R.S. § 28-7204 (2013), and the City Code, § 31-64(b), because the abandonment method approved by the City—a public sale—was engineered to ensure that GCU would be the only bidder at the sale. As they see the situation, through the final stipulations, the

---

[7]After the Landowners acknowledged the record contained no evidence the conditional abandonment would have an adverse impact on their "properties as rentals," the Landowners told the superior court they could "call" Appellant Palmer "if that would be helpful to the court." Citing *Robertson v. Superior Court*, 136 Ariz. 441, 442, 666 P.2d 540, 542 (App. 1983) (in special action filed in the superior court, that court is limited to reviewing the administrative record), GCU objected to Palmer testifying, asserting the superior court was limited to reviewing the record made before the City, as the Landowners had filed a petition requesting special action relief. The superior court did not rule on GCU's objection to Palmer's testimony as the Landowners then acknowledged that "the crux" of their case was that the City had acted illegally. At that point, the Landowners did not reiterate their offer to present testimony regarding special damages, nor did they make any offer of proof.

> City and Grand Canyon have engineered an auction in which there will be only one bidder—Grand Canyon. If someone other than Grand Canyon buys the property, that person has to agree, at its own expense, to do every single thing Grand Canyon wants done to the property. . . . One does not have to go out on much of a limb to predict that if this "sale" does go forward, there will be only one bid—Grand Canyon's.

Although the Landowners have, in convincing fashion, argued the final stipulations will discourage anyone other than GCU from purchasing the roadway, neither A.R.S. § 28-7204 nor the corresponding City Code provision, § 31-64(b), restrict or limit the stipulations a city may impose when exercising its legislative authority to abandon a roadway.

**¶30**      After a municipal corporation decides a roadway is no longer necessary for public use, it may abandon the roadway by conveying the roadway to an abutting landowner, *see* A.R.S. § 28-7205 (2013) and City Code § 31-64(a), or, if the roadway is in a planned development, by conveying the roadway to a planned development owners association, *see* A.R.S. § 28-7206 (2013) and City Code § 31-64(d), or, as discussed, to the successful purchaser at the public sale under A.R.S. § 28-7204 and City Code § 31-64(b).

**¶31**      When the City elects to proceed by sale, A.R.S. § 28-7204 and the corresponding City Code provision require it to provide notice in advance of the date of the sale to the public and abutting owners. The statute and corresponding City Code provision require that the notice describe the roadway or portion of the roadway to be sold, refer to the statute and code provision, and "[s]tate that a person may submit purchase offers and that abutting owners have preference rights pursuant to this article." A.R.S. § 28-7204(C).

**¶32**      On its face, neither A.R.S. § 28-7204 nor the corresponding City Code provision mandate the substance or content of any stipulation the City may impose on the purchaser of the roadway. The statute and corresponding City Code provision concern notice—notice of the sale to the public and the abutting owners and the content of the notice. The Landowners' argument that the final stipulations violate A.R.S. § 28-7204 and the corresponding City Code provision requires us to read into those provisions requirements that are not otherwise within them and to expand those provisions to matters that simply do not fall within the statutory and

code language. We cannot do that. *Cicoria v. Cole*, 222 Ariz. 428, 431, ¶ 15, 215 P.3d 402, 405 (App. 2009) (court "will not read into a statute something that is not within the manifest intent of the legislature as indicated by the statute itself" and will not extend a statute to matters that do not fall within its express provisions) (citation omitted).

## CONCLUSION

**¶33** We affirm the superior court's judgment dismissing the Landowners' complaint against GCU and the City. We deny GCU's request for fees on appeal fees pursuant to A.R.S. § 12-349 (Supp. 2016), which authorizes a court to assess fees as a sanction. Although we have affirmed the superior court's judgment dismissing the Landowners' complaint, their appeal was not frivolous. As the prevailing parties on appeal, we award GCU and the City costs on appeal as authorized by law contingent upon their compliance with Arizona Rule of Civil Appellate Procedure 21.

